[No. F047529. Fifth Dist. Jan. 12, 2006.]

In re BREONNE TATE on Habeas Corpus.

## COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Stephen P. Acquisto and R. Michael Llewellyn, Deputy Attorneys General, for Appellant California Department of Corrections.

Heather MacKay, under appointment by the Court of Appeal, for Respondent Breonne Tate.

## OPINION

**GOMES, J.**—The Department of Corrections (Department) appeals the lower court's granting a writ of habeas corpus to inmate, Breonne Tate. During Tate's incarceration on a four-year six-month prison term for a violent felony, Tate was convicted of a nonviolent in-prison offense and sentenced to a fully consecutive two-year term. Because the four-year six-month term was for a violent felony, the Department applied Penal Code section 2933.1's[1] limitation on credits to the terms on both convictions. The trial court partially granted Tate's petition for writ, finding the statute's limitation applied only to the four-year six-month term attributable to the violent felony. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 2001, Tate was convicted in Los Angeles County of attempted robbery, with a finding that he personally used a firearm (§§ 211, 664, 12022.5, subd. (a)(1)). Tate was sentenced to four years and six months in state prison. The finding that Tate personally used a firearm in committing the attempted robbery makes the crime a "violent felony" within the meaning of section 667.5, subdivision (c)(9). This in turn triggers the application of section 2933.1, subdivision (a),[2] which limits the accrual of worktime credit to 15 percent of the inmate's sentence. In contrast, section 2933 provides that an inmate who is not subject to statutory limitations on the accrual of worktime

---

[1] All further section references are to the Penal Code.

[2] Hereafter section 2933.1(a).

credit may earn up to 50 percent, or one day of credit for each day the inmate participates in a work, training, or education program. (§ 2933; *In re Reeves* (2005) 35 Cal.4th 765, 768 [28 Cal.Rptr.3d 4, 110 P.3d 1218] (*Reeves*).)

On October 6, 2003, while serving his prison term for the attempted robbery conviction, Tate pled guilty in Tuolumne County, pursuant to a negotiated plea reflected in a minute order, to possession of a weapon in prison (§ 4502). The court sentenced Tate to state prison for "the lower term of two (2) years at 50% pursuant to the negotiated plea." As section 4502 requires the sentence imposed for in-prison possession of a weapon be served consecutively, the court ordered the term to run consecutive to the term he was serving on the Los Angeles County conviction. Section 1170.1, subdivision (c)[3] specifies that a consecutive sentence for an in-prison offense "shall commence from the time the person would otherwise have been released from prison." The effect of this provision is that the sentence for the in-prison offense must be fully consecutive to the term already being served, rather than being reduced to one-third the middle term pursuant to the usual determinate sentencing rule. (*People v. McCart* (1982) 32 Cal.3d 338, 343 [185 Cal.Rptr. 284, 649 P.2d 926].)

■ The Department calculates an earliest possible release date (EPRD) for each inmate. (§ 2932, subd. (e); Cal. Code Regs., tit. 15, § 3043, subd. (c)(5); Cal. Dept. of Corrections, Operations Manual (2000) § 73030.8.13.) To do so, it starts with the date of sentencing, adds the total prison term imposed, and subtracts any presentence credit awarded. This establishes a maximum release date. From this date, the Department subtracts worktime credits the inmate has earned or is expected to earn in his current credit-earning status, adds back any worktime credits that have been denied or lost through disciplinary actions, and subtracts any denied or lost credits that have been restored. The result is the EPRD, with the proviso that it cannot exceed the maximum release date calculated from the total prison term less presentence credits. (Cal. Dept. of Corrections, Operations Manual, *supra*, § 73030.8.13.) The EPRD is predictive, in that it is subject to change. Therefore, such things as a change in the inmate's credit-earning status, the denial or loss of credit through disciplinary action, the restoration of previously denied or lost credits, or a subsequently imposed consecutive prison term will change the calculation. The Department recalculates the EPRD upon any such change and at six-month intervals. (§ 2932, subd. (e); Cal. Code Regs., tit. 15, § 3043, subd. (c)(5)(B).)

After Tate's Tuolumne County conviction, the Department calculated his EPRD as August 4, 2007 by applying the 15 percent limitation of section 2933.1(a) to his two-year sentence on that conviction. Through Department

---

[3] Hereafter section 1170.1(c).

administrative procedures, Tate unsuccessfully sought to have his release date adjusted to October 10, 2006 to reflect a 50 percent credit on the Tuolumne County conviction. Tate then filed a petition for writ of habeas corpus in Tuolumne County Superior Court, seeking specific performance of the plea bargain. Tate asserted the plea bargain had been breached because the Department "is not giving petitioner Goodtime/Worktime entitlement under Penal Code § 2933. Rather, [the Department] is only giving petitioner 15% reduction of his term credits, instead of the 1/2 Worktime credits bargained for in [the Tuolumne County conviction]." The trial court issued an order to show cause, and the Department filed a return, asserting that because Tate had been convicted of a violent felony, it properly applied a 15 percent credit earning rate to the Tuolumne County conviction in accordance with section 2933.1. In his denial to the return, Tate requested that if the court could not order the Department to grant him half-time credit, he should be allowed to withdraw his guilty plea, since it was entered based on the understanding he would receive 50 percent credit.[4]

Following a hearing on the petition, the trial court issued a written order granting the petition in part, directing the Department "to calculate [Tate's] worktime credits on the sentence to be served in [the Tuolumne County conviction] pursuant to Penal Code § 2933." The court reasoned: "The credit limitation of 15% argued by the Department of Corrections is not supported by the plain language of Penal Code § 2933.1. That statutory language limits the 15% worktime credits to the sentence imposed on the conviction of the violent felony. The statute does not address limitations on worktime credits for those persons who have previously been convicted of a violent felony, but who are now convicted of a nonviolent offense that was separately charged and proved."

## DISCUSSION

The Department contends the court erred when it ordered the Department to calculate Tate's worktime credits on his Tuolumne County conviction pursuant to section 2933, which allows a prisoner to earn worktime credit at a rate of 50 percent. (§ 2933, subd. (a).) The Department asserts the 15 percent worktime credit limitation of section 2933.1 applies to both of Tate's convictions. The Department, relying on *Reeves, supra,* 35 Cal.4th 765,

---

[4] The record is unclear regarding the plea bargain's terms with respect to 50 percent worktime credits. We have not been provided with the reporter's transcript of the plea hearing. To the extent the bargain was intended to guarantee Tate the receipt of a particular amount of postsentence worktime credit, rather than merely inform him of the worktime credit his conviction would be eligible for, we question the validity of the plea bargain. Since neither party raises the issue, however, and we conclude his Tuolumne County conviction is in fact eligible for 50 percent credit pursuant to section 2933, we do not resolve the issue.

reasons that because the two convictions resulted in consecutive sentences, the two sentences are merged into a single aggregate term to which section 2933.1(a) applies.

The issue presented here is whether section 2933.1(a) restricts Tate's ability to earn worktime credit against a consecutive sentence for a nonviolent in-prison offense. By the terms of section 2933.1(a), the 15 percent worktime credit limitation applies to "any person who is convicted of a [violent] felony offense . . . ." (§ 2933.1(a).)[5] Our Supreme Court recently addressed the meaning of this phrase in the context of whether section 2933.1(a) restricts an inmate's ability to earn worktime credits against a concurrent sentence for a nonviolent offense in *Reeves, supra,* 35 Cal.4th 765.

In *Reeves,* the defendant was convicted within one month of both a violent offense (assault with a deadly weapon other than a firearm), which triggered the 15 percent credit limitation of section 2933.1(a), and a nonviolent offense (possessing a controlled substance for sale). He was sentenced to concurrent terms in state prison of five years plus an enhancement on the violent offense and 10 years plus enhancements on the nonviolent offense. (*Reeves, supra,* 35 Cal.4th at pp. 768–769.) The Department calculated his release date based on its understanding that section 2933.1(a) applied fully to both of the defendant's sentences so he would accrue only 15 percent worktime credit for the entire duration of his prison commitment, even after completing the five-year sentence for the violent felony. (35 Cal.4th at p. 769.) The defendant challenged the Department's decision in a petition for habeas corpus, which the trial court granted, reasoning that section 2933.1(a) had no effect on his sentence for the nonviolent offense. The appellate court affirmed. (35 Cal.4th at pp. 769–770.)

The Supreme Court viewed the issue of whether 2933.1(a) applied to the defendant's concurrent sentence as turning on the meaning of the phrase in

[5] Section 2933.1 provides in full: "(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933. [¶] (b) The 15-percent limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law. However, nothing in subdivision (a) shall affect the requirement of any statute that the defendant serve a specified period of time prior to minimum parole eligibility, nor shall any offender otherwise statutorily ineligible for credit be eligible for credit pursuant to this section. [¶] (c) Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a). [¶] (d) This section shall only apply to offenses listed in subdivision (a) that are committed on or after the date on which this section becomes operative."

section 2933.1(a), "any person who is convicted of a [violent] felony offense . . . ." (*Reeves, supra*, 35 Cal.4th at p. 770.) The court concluded the language is ambiguous, at least as applied to the facts of the case, noting the legislative history did not provide any guidance as to the application of credits to concurrent sentences. (*Id.* at pp. 770–771.) In searching for a reasonable construction of the statute, the court determined the phrase could not refer to a point of historical fact, thereby disqualifying for all time any person who had ever been convicted of a violent offense from earning more than 15 percent worktime credit. (*Id.* at p. 771.)

The court also rejected the interpretations offered by the People and the defendant. The People argued section 2933.1(a) applies to offenders rather than offenses, and therefore applies to a designated offender's entire period of confinement provided the offender at some point during that period serves time for a violent offense. The court agreed with this interpretation in some respects but not in others. With respect to consecutive terms, the court explained: "We may confidently assume that an offender serving a sentence that combines *consecutive* terms for violent and nonviolent offenses is subject to the credit restriction imposed by section 2933.1(a) for the entire sentence. Under the Determinate Sentencing Act (§ 1170 et seq.), multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' (§ 1170.1, subd. (a)) that merges all terms to be served consecutively and complies with the rules for calculating aggregate terms (e.g., one-third the base term for subordinate terms and specific enhancements applicable to subordinate terms (*ibid.*)), whether or not the consecutive terms arose from the same or different proceedings (*ibid.*; see also § 669; Cal. Rules of Court, rule 4.452). To suggest that a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence would be a meaningless abstraction. For this reason, when an aggregate term includes time for a violent offense, at any point during that term the prisoner literally 'is convicted of a [violent] felony offense' (§ 2933.1(a)) and actually is serving time for that offense. Accordingly, a restriction on credits applicable to 'any person who is convicted of a [violent] felony offense' (*ibid.*) logically applies throughout the aggregate term." (*Reeves, supra*, 35 Cal.4th at pp. 772–773.)

The court explained that this logic does not apply to concurrent terms because although "[a] court that decides to run terms *consecutively* must create a new, 'aggregate term of imprisonment' (§ 1170.1, subd. (a)) into which all the consecutive terms merge, . . . no principle of California law merges *concurrent* terms into a single aggregate term." (*Reeves, supra*, 35 Cal.4th at p. 773.) The court noted section 1170.1, which contains the statutory mandate and authority for creating aggregate consecutive terms, says nothing about concurrent terms, and a later sentencing court may not change a prior sentencing court's discretionary decision to make a particular term concurrent.

(*Reeves, supra,* 35 Cal.4th at p. 773.) The court further noted that since the defendant had already served the term for the violent offense that caused section 2933.1(a) to apply, the statement he " 'is convicted of a [violent] felony offense' " (35 Cal.4th at p. 773) is true only as a matter of historical fact, explaining that "[t]oday, his conviction for the violent offense gives the Department no claim to his physical custody; but for the time remaining on the separate, concurrent term for the nonviolent offense, he would be entitled · to release." (*Reeves, supra,* 35 Cal.4th at p. 777.) The court concluded that given the statute's ambiguity, the People's interpretation was not entirely fair or reasonable. (*Id.* at p. 777.)

The court also rejected the defendant's interpretation of section 2933.1(a), i.e. that it has no effect on his concurrent sentence for the nonviolent offense, thereby resulting in the accrual of credit at two different rates—15 percent on the term for the violent offense and 50 percent on the term for the nonviolent offense. (*Reeves, supra,* 35 Cal.4th at p. 778.) The court noted this interpretation created tension with the statutory language because during any period of time when the defendant is serving time in prison for both the violent and nonviolent offense, he "most certainly '*is* convicted of a [violent] offense' (§ 2933.1(a), italics added) in every relevant sense. Thus, to permit him to accrue worktime credit during such a period of imprisonment at the rate of 50 percent for any purpose literally conflicts with the language of section 2933.1(a)." (*Reeves, supra,* 35 Cal.4th at pp. 778–779.)

The court concluded: "An interpretation of section 2933.1(a) exists that is faithful to its language and to what we know of the Legislature's purpose, produces fair and reasonable results, and can be readily understood and applied. Lacking definitive guidance in the language or history of the statute, our aim must be to identify such an interpretation. [Citation.] As mentioned at the outset, we interpret the section as follows: Section 2933.1(a) limits to 15 percent the rate at which a prisoner convicted of and serving time for a violent offense may earn worktime credit, regardless of any other offenses for which such a prisoner is simultaneously serving a sentence. On the other hand, section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section." (*Reeves, supra,* 35 Cal.4th at pp. 779–780, fns. omitted.)

As Tate points out, the Supreme Court's decision in *Reeves* does not directly address how section 2933.1(a) should apply in the instant case because, unlike the defendant in *Reeves*, Tate was convicted of first a violent offense, to which Tate admits the 15 percent credit limitation of section 2933.1(a) applies, and then later convicted of a nonviolent in-prison offense, which the court was required to sentence consecutively. (§ 4502, subd. (a).)

Relying on language in *Reeves* regarding the application of section 2933.1(a) to consecutive sentences, the Department argues the mere fact these are consecutive sentences compels the conclusion the 15 percent limitation of section 2933.1(a) applies to the entire sentence. We disagree.

As explained *ante*, the *Reeves* court held that section 2933.1(a) does not apply to a prisoner who is not actually serving a sentence for a violent offense. (*Reeves*, *supra*, 35 Cal.4th at p. 780.) In so holding, the court distinguished between consecutive sentences and concurrent sentences. The court concluded the credit limitation of section 2933.1(a) applies throughout the aggregate term of consecutive sentences imposed under section 1170.1, subdivision (a),[6] reasoning that since such sentences are merged into a single aggregate term of imprisonment for all convictions, as long as one conviction is for a violent felony offense, the prisoner literally "is convicted of a [violent] felony offense" (§ 2933.1(a)) and is actually serving time for that offense. (*Reeves*, *supra*, 35 Cal.4th at pp. 772–773.) In contrast, concurrent terms are not merged into a single aggregate term, so they do not constitute a single, unified term of confinement for purposes of worktime credit. (*Id.* at p. 773.) Accordingly, once a prisoner subjected to concurrent sentences for violent and nonviolent offenses has served his sentence for the violent offense, he no longer "is convicted of a [violent] felony offense" (§ 2933.1(a)) and section 2933.1(a) does not apply to any time remaining on the separate, concurrent term for the nonviolent offense. (*Reeves,* at pp. 773, 780.)

As Tate points out, consecutive sentences for in-prison offenses are treated differently than consecutive sentences imposed only under section 1170.1(a). Consecutive sentencing of in-prison offenses is governed by section 1170.1(c), which provides, as pertinent here, that "[i]n the case of any person convicted of one or more felonies committed while the person is confined in a state prison . . . and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison."[7]

██ It is well settled that under section 1170.1(c), a term for an in-prison offense or multiple in-prison offenses begins to run at the end of the prison

---

[6] Hereafter section 1170.1(a).

[7] Section 1170.1(c) provides in its entirety: "In the case of any person convicted of one or more felonies committed while the person is confined in a state prison or is subject to reimprisonment for escape from custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison. If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a). This subdivision shall be applicable in cases of convictions of more than one offense in the same or different proceedings."

term imposed for the original out-of-prison offenses. (See *People v. Langston* (2004) 33 Cal.4th 1237, 1242 [17 Cal.Rptr.3d 596, 95 P.3d 865]; *People v. McCart, supra,* 32 Cal.3d at pp. 340, 343.) As one appellate court explained, in-prison offenses "are exempt from the general sentencing scheme." [Citation.] A sentence under subdivision (c) is longer than a sentence imposed under subdivision (a) because the in-prison offenses are fully consecutive to the sentence for the offense for which the defendant was in prison. Using sentencing jargon 'the in-prison offense is treated as a new principal term rather than as a subordinate term to the out-of-prison offense.' [Citations.]" (*People v. White* (1988) 202 Cal.App.3d 862, 869–870 [249 Cal.Rptr. 165]; see also *People v. Reed* (1993) 17 Cal.App.4th 302, 305 [21 Cal.Rptr.2d 425].) Thus, "the term for an in-prison offense does not become part of the aggregate prison term imposed for those offenses which were committed 'on the outside.' Instead, the defendant is imprisoned for a total term consisting of the sum of his aggregate sentence computed under section 1170.1(a) plus the new aggregate term imposed under section 1170.1(c). (*People v. McCart, supra,* 32 Cal.3d at p. 340.) The latter term starts to run at the end of the prison term imposed for the defendant's original 'outside' offense. (*Ibid.*)" (*People v. White, supra,* 202 Cal.App.3d at p. 870; see also *People v. Langston, supra,* 33 Cal.4th at p. 1242 [". . . new crimes committed while in prison are treated as separate offenses and begin a new aggregate term. [Citations.]"].)

■ Thus, Tate's consecutive sentence for his nonviolent in-prison offense is not merged or aggregated with his original term for the violent out-of-prison offense. Instead, the two terms are treated as separate terms, with the term for the in-prison offense beginning only when Tate completes the term for his out-of-prison offense. Since the two terms are separate, they do not present the same concerns the Supreme Court raised with respect to consecutive sentences imposed solely under section 1170.1(a), i.e. that it would be a "meaningless abstraction" to suggest a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence. (*Reeves, supra,* 35 Cal.4th at p. 773.) Although, as the Supreme Court explained in *Reeves,* section 2933.1(a) applies to a prisoner's entire sentence, it only does so to the extent the prisoner is serving time for a violent offense. (*Reeves, supra,* 35 Cal.4th at p. 780, fn. 18.)

In this case, once Tate completed his sentence for the violent out-of-prison offense, he was no longer subject to imprisonment for a violent offense and consequently no longer a "person who is convicted of a [violent] felony offense" (§ 2933.1(a)). Like the defendant in *Reeves,* Tate's conviction for the violent offense gives the Department no claim to his physical custody; he would be entitled to release but for the time remaining on the separate term for the nonviolent offense. Accordingly, the Department erred when it calculated Tate's EPRD by applying section 2933.1(a) to his Tuolumne County conviction, as that conviction is eligible for worktime credits pursuant to

section 2933. Therefore, the trial court's order was correct to the extent it ordered the Department to apply section 2933 to Tate's Tuolumne County conviction.

## DISPOSITION

The trial court's order partially granting the writ of habeas corpus is affirmed.

Vartabedian, Acting P. J., and Wiseman, J., concurred.