184 Cal.App.4th 615 (2010)
109 Cal.Rptr.3d 214
THE PEOPLE, Plaintiff and Respondent,
v.
JASON HOPKINS, Defendant and Appellant.
Nos. H033413, H034048.
Court of Appeals of California, Sixth District.
May 11, 2010.
*618 William M. Robinson, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
PREMO, J.
In appeal No. H033413, defendant Jason Hopkins argues that the trial court erred in failing to award him additional presentence custody credits, following his plea of no contest to a charge of possession of paraphernalia intended to be used for injecting a controlled substance while incarcerated. (Pen. Code, § 4573.6.)[1]
In appeal No. H034048, Hopkins appeals the trial court order denying his motion for additional presentence custody credits, the same credits which are at issue in appeal No. H033413. By order dated April 24, 2009, we directed that the two appeals be consolidated for purposes of briefing, argument and decision.
In both appeals, Hopkins contends that he is entitled to additional presentence credits because he was held in prison past his parole date solely on the basis of the new charges brought against him. He also contends that the denial of credits violates his constitutional equal protection rights.
By supplemental opening brief, Hopkins further argues that he is entitled to additional presentence conduct credit due to the amendment of section 4019, which went into effect after he was sentenced. Pursuant to this amendment, defendants are now entitled to day-for-day conduct credit, rather than one day for every two days served. Hopkins contends that, although the amendment does not expressly provide that it is retroactive, it should apply to all defendants, including himself, whose cases were not final as of its effective date, January 25, 2010.
We agree that Hopkins is entitled to additional presentence credits due to his being held in prison past his parole date[2] and will reverse the order *619 denying his motion for presentence credits and direct that the judgment be modified to award those additional credits. We do not agree that the amendment to section 4019 is retroactive, however. As so modified, we will affirm the judgment.

I. Factual[3]and Procedural Background

On January 26, 2008, Correctional Officer L. Amaya was conducting a security check of a dorm at Correctional Training Facility when he noticed Hopkins and another inmate huddled together between two lockers. Amaya saw that the other inmate was holding a plastic spoon which contained a brown liquid. Amaya ordered the inmate to put the spoon on the bed and proceeded to search both inmates. Before he was searched, Hopkins admitted that he had a syringe in his waistband. Amaya seized the syringe and the spoon, which was found to contain 0.27 grams of heroin. A rules violation report (CDC 115) was prepared on February 6, 2008, charging Hopkins with possession of a controlled substance (heroin) while incarcerated, a level "B" offense, punishable by a loss of between 121 and 150 days of custody credit.
The case was referred to the Monterey County District Attorney's Office, which filed a criminal complaint on July 10, 2008, alleging one count of possession of a controlled substance (heroin) in prison. (§ 4573.6.) On August 27, 2008, the complaint was amended to allege one count of possession of drug paraphernalia, rather than possession of heroin. (Ibid.) Hopkins agreed to plead no contest to the amended complaint, in exchange for a sentence of two years in prison, consecutive to any other term. The matter was referred to the probation department for a calculation of credits.
At the September 17, 2008 sentencing hearing, Hopkins was sentenced to two years in prison, consecutive to any other term. The probation officer's report noted that Hopkins was only entitled to custody credits from the date of his parole from California's Department of Corrections and Rehabilitation (CDCR) to the Monterey County jail, i.e., July 26, 2008. Until that date, Hopkins was a sentenced prisoner and could not earn custody credits against the charged offense. Although Hopkins's counsel argued that he was entitled to additional credits, citing People v. Bruner (1995) 9 Cal.4th 1178 [40 Cal.Rptr.2d 534, 892 P.2d 1277] (Bruner), the sentencing court adopted the probation department's recommendation, awarding Hopkins 80 days of credits, consisting of 54 days of custody credit from July 26, 2008, plus 26 days of good time/work time credits.
*620 On October 2, 2008, Hopkins appealed the judgment (H033413), on the grounds that he was "denied presentence credits to which he was entitled."
On February 25, 2009, Hopkins filed a motion in the trial court for additional presentence credits. The motion sought 75 additional days of custody credits under section 2900.5 based on Hopkins's contention that he was scheduled to have been paroled on May 12, 2008, and that his continued custody until July 26, 2008, was solely due to the charged offense of possession of drugs and/or paraphernalia in prison. In support of his motion, Hopkins submitted certified copies of documents from his CDCR central file, including his CDCR chronological history form and documents pertaining to the CDC 115. In these documents, there are several references to an EPRD[4] of May 12, 2008.
The district attorney filed the following three-sentence response to Hopkins's motion: "The People object to the defendant's motion for additional presentence credits. The credits were correctly determined by the court at sentencing on September 17, 2008. Pursuant to In re Rojas (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], the defendant is not entitled to any custody credits prior to his release on parole."
Hopkins's motion was heard and denied on March 18, 2009. Hopkins timely appealed (H034048).

II. Discussion

A. Additional custody credits due to incarceration past EPRD

Hopkins contends that, because the prison records show that he had an EPRD of May 12, 2008, he is entitled to custody credits because his continued incarceration after that date was solely attributable to the charges brought against him for possession of heroin and injection paraphernalia.
Section 2900.5 governs the circumstances in which custody credits will be awarded. Subdivision (a) of that section provides that "[i]n all felony and misdemeanor convictions, either by plea or by verdict, when the defendant *621 has been in custody, including . . . any time spent in a jail, . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment. . . ." Subdivision (b) of section 2900.5 further states: "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."
(1) In Bruner, supra, 9 Cal.4th 1178, the court discussed the application of section 2900.5, subdivision (b). The defendant in that case sought presentence credit on his prison term for cocaine possession where he had served presentence custodial time for a parole revocation based on the same cocaine possession, but also because he had absconded from parole supervision, had a dirty drug test, and had stolen a credit card. The court held, consistently with two prior casesIn re Rojas, supra, 23 Cal.3d 152 and In re Joyner (1989) 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967]that "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a `but for' cause of the earlier restraint. Accordingly, when one seeks credit upon a criminal sentence for presentence time already served and credited on a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was `a' basis for the revocation matter as well." (Bruner, supra, at pp. 1193-1194.) Under this "`strict causation'" standard, no credit is allowed "unless the conduct leading to the sentence was the true and only unavoidable basis for the earlier custody." (Id., at p. 1192.)
The burden of proof belongs to the defendant and, as noted in Bruner, this burden may be difficult to meet "because it requires a prisoner seeking credit for a multiple-cause presentence restraint to `prove a negative'i.e., that the restraint would not have occurred but for the current crimes alone." (Bruner, supra, 9 Cal.4th at p. 1193.) However, this burden "arises from the limited purposes of the credit statute itself. The alternative is to allow endless duplicative credit against separately imposed terms of incarceration when it is not at all clear that the misconduct underlying these terms was related." (Ibid.)
Accordingly, to receive the credit he is claiming, Hopkins had the burden to show that his actual parole date from prison was May 12, 2008, and that his continued incarceration after that date would not have occurred but for the current crime. Hopkins met that burden.
*622 Hopkins's prison chronological history form shows that, as of November 9, 2007, his EPRD was calculated to be May 12, 2008. The next reference to his EPRD on this form is dated May 12, 2008, and it states "Subject is being retained in custody pending disposition of CDC form 115 . . . for which 150 days may be lost." To the right of that entry is a notation that Hopkins's "tentative EPRD" is July 26, 2008.[5] In addition, a document entitled "Notice of Pending CDC-115," prepared along with the CDC 115 form itself on February 6, 2008, contains a box labeled "Release Date" in which "5.12.08 EPRD" appears.
It is true that "[t]he EPRD is predictive, in that it is subject to change." (In re Tate, supra, 135 Cal.App.4th at p. 759.) The EPRD may be altered in a number of ways, including by the loss of credits as a result of prison disciplinary action. (Ibid.) Possession of heroin or injection paraphernalia is a level "B" offense, punishable by a loss of between 121 and 150 days of custody credit. Had Hopkins's CDC 115 been adjudicated resulting in a loss of custody credits or had his credit-earning status been downgraded, his EPRD would necessarily have been extended. In this case, however, there is no evidence that any of these things occurred.[6] Instead, it appears that Hopkins was held in prison past his (then) most recently calculated EPRD of May 12, 2008, simply because he had a pending CDC 115 which had been referred out for possible prosecution.
(2) Where a matter has been referred out for such prosecution, prison disciplinary proceedings may lawfully be postponed where the inmate requested such a postponement, "exceptional circumstances"[7] exist or where the inmate is transferred out of the custody of the institution. (Cal. Code Regs., tit. 15, § 3320, subd. (b).) The record does not show that there was any such *623 basis for a postponement. The CDC 115 form, which details the circumstances which led to the discovery of the syringe in Hopkins's waistband, includes a section entitled "Postponement of Disciplinary Hearing." In this section, an inmate may affirmatively elect, by checking the appropriate box, either to postpone the disciplinary hearing "pending [the] outcome of [a] referral for prosecution" or elect to have his disciplinary hearing proceed despite the referral for prosecution.[8] Here, however, this section of Hopkins's CDC 115 is completely blankthere is neither a request for postponement of his disciplinary hearing nor an election to proceed with it.
(3) These documents establish that Hopkins's continued custody in prison beyond May 12, 2008, was solely due to the same conductpossession of drug paraphernaliafor which he was subsequently prosecuted by the Monterey County District Attorney. No contrary evidence was presented to the trial court by the district attorney, and the trial court should have therefore granted Hopkins's motion.
Consequently, we find that Hopkins is entitled to 75 days of custody credits under section 2900.5.

B. Conduct credit under section 4019

1. Retroactivity analysis

As discussed above, Hopkins filed a supplemental opening brief, arguing that he is entitled to additional conduct credits due to a recent amendment to section 4019. As of the amendment's effective date, January 25, 2010, defendants are entitled to day-for-day credit, rather than one day for every two days served. Hopkins argues, although the amendment does not provide that it is retroactive, it should apply to all defendants, including himself, whose cases were not final as of its effective date, January 25, 2010.
Following oral argument, we granted the Attorney General's request to vacate submission and file a supplemental letter brief addressing the then recent decision in People v. Brown (2010) 182 Cal.App.4th 1354 (Brown) which held that the amendment to section 4019 was retroactive.[9]
*624 (4) Prior to being sentenced, a criminal defendant may earn additional credit, pursuant to section 4019, by performing assigned labor (§ 4019, subd. (b)) or by his or her good behavior (id., subd. (c)). Such credits are collectively referred to as "conduct credit." (People v. Dieck (2009) 46 Cal.4th 934, 939, fn. 3 [95 Cal.Rptr.3d 408, 209 P.3d 623].)
At the time Hopkins was sentenced in September 2008, section 4019 provided that a defendant could accrue conduct credit at a rate of two days for every four days of actual presentence custody. (Former § 4019.) The statute was amended effective January 25, 2010, to provide that a qualifying[10] defendant may accrue conduct credit at a rate of four days for every four days of presentence custody. However, the statute does not incorporate a saving clause.
Hopkins relies on In re Estrada (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (Estrada), which holds that when the Legislature amends a statute for the purpose of lessening the punishment, in the absence of clear legislative intent to the contrary, a criminal defendant should be accorded the benefit of a mitigation of punishment adopted before his criminal conviction became final. (Id., at p. 748.)
(5) Section 3 provides that no part of the Penal Code is "retroactive, unless expressly so declared." This statute "reflects the common understanding that legislative provisions are presumed to operate prospectively, and that they should be so interpreted `unless express language or clear and unavoidable implication negatives the presumption.'" (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1208 [246 Cal.Rptr. 629, 753 P.2d 585].) In Estrada, the California Supreme Court determined that an amendatory statute lessening punishment "`represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law,'" and that, in such cases, the section 3 presumption of prospective application is rebutted. (Estrada, supra, 63 Cal.2d at p. 745.)
In Brown, the Third District Court of Appeal found that the rule in Estrada applied to the amendment to section 4019 and that the Legislature intended it to be retroactive because the legislation was enacted in order to "ease budgetary concerns by reducing the prison population." (Brown, supra, 182 Cal.App.4th at p. 1364.) According to Brown, the "holding in Estrada logically applies" to the amendment because an increase in conduct credits reduces the total term of imprisonment "which necessarily reduces the punishment for certain crimes." (Ibid.) We respectfully disagree.
*625 Senate Bill No. 18 (2009-2010 3d Ex. Sess.) (Senate Bill No. 18), the legislation which amended section 4019, was enacted in order to address the state's fiscal emergency, as proclaimed by Governor Schwarzenegger in December 2008. (Stats. 2009-2010, 3d Ex. Sess. 2009, ch. 28, § 62.) By increasing the amount of credits available to certain inmates, qualifying inmates' terms will be shortened and prison populations reduced, resulting in reduced costs to the state. Obviously, if the amendment to section 4019 operated retroactively it would result in greater savings to the state, since more inmates would be eligible to have their prison terms reduced. It does not follow, however, that applying the amendment prospectively is inconsistent with the Legislature's goal. Prospective application of the amendment also results in savings; it simply results in less savings than would retroactive application. Therefore, we do not think that the Legislature's intent to reduce prison expenditures is particularly instructive on the issue of retroactivity. It certainly cannot be conflated into a determination, as in Estrada, that the original punishment for a particular crime was too severe and that a lesser punishment was more appropriate. "Rather, because the express purpose of Senate Bill [No.] 18 was to address the state's fiscal emergency, it is also plausible the Legislature determined the following: The persons whose sentences will be reduced under the section 4019 amendment are just as culpable and deserving of punishment as they were before the amendment; after all, there has been no legislative determination that the offenses for which those persons were sentenced should be punished less severely." (People v. Rodriguez (2010) 183 Cal.App.4th 1, 9.)
We find that the rule laid out in Estrada is not applicable here because the amendment to section 4019 does not necessarily lessen a defendant's punishment. Instead, it allows only for additional conduct credit, which must be earned, as opposed to additional custody credit which is awarded to a defendant simply because he or she is in presentence custody.[11] Applying the amendment to section 4019 retroactively would not advance the statute's purpose of rewarding good behavior while in presentence custody, since it is impossible to influence behavior after it has occurred. (People v. Rodriguez, supra, 183 Cal.App.4th 1.)
It is worth noting that Senate Bill No. 18 also amended other credit statutes. For example, section 41 of Senate Bill No. 18 amended section 2933.3 to provide for increased credit for certain inmates who have completed training for inmate firefighter assignments. (§ 2933.3, subds. (b) & (c).) Amended section 2933.3 also provides that the "credits authorized in subdivisions (b) and (c) shall only apply to inmates who are eligible after *626 July 1, 2009." (Id., subd. (d).) This is an express provision of retroactivity by the Legislature, albeit one of limited application.
By expressly providing limited retroactivity in section 2933.3, subdivision (d), the Legislature demonstrated that it could, if it wished, similarly provide that other changes to the presentence credit scheme, such as the amendment to section 4019, would apply retroactively. Its failure to do so gives rise to the inference that the Legislature did not intend the amendment to section 4019 to have retroactive effect.
Hopkins also directs our attention to section 59 of Senate Bill No. 18, which immunizes the CDCR from liability for "reasonable delays" in recalculating time credits due to the amendments made by the legislation, arguing that it provides persuasive evidence of the Legislature's intent that the amendment apply retroactively.
Section 59 of Senate Bill No. 18 provides: "The Department of Corrections and Rehabilitation shall implement the changes made by this act regarding time credits in a reasonable time. However, in light of limited case management resources, it is expected that there will be some delays in determining the amount of additional time credits to be granted against inmate sentences resulting from changes in law pursuant to this act. An inmate shall have no cause of action or claim for damages because of any additional time spent in custody due to reasonable delays in implementing the changes in the credit provisions of this act. However, to the extent that excess days in state prison due to delays in implementing this act are identified, they shall be considered as time spent on parole, if any parole period is applicable."
Hopkins argues that this section would be surplusage if section 4019 were found to operate prospectively only. The only credit calculations CDCR would need to make as a result of the amendment to section 4019 is for prisoners already in its custody, and the CDCR would only need to recalculate a prisoner's presentence credit if the amendment to section 4019 was retroactive. According to Hopkins, there is nothing to indicate that Senate Bill No. 18, section 59 was intended to apply to only certain of Senate Bill No. 18's amendments regarding credits, and not to all those amendments.
We disagree. As discussed above, Senate Bill No. 18 did amend other credit statutes, at least one of which expressly gave retroactive credit to certain inmates, i.e., section 2933.3. Consequently, even if the amendment to section 4019 were found to be prospective in application, section 59 of Senate Bill No. 18 would operate to immunize the CDCR from suit for any reasonable delay in calculating additional credits earned under section 2933.3, subdivisions (b) and (c) and would not be surplusage.
*627 The Rodriguez court, addressing this exact argument, noted that even if there is nothing in Senate Bill No. 18 to suggest that section 59 was intended to apply only to specific amendments, "neither is there any suggestion that section 59 was meant to apply to any changes other than ones which the Legislature, as in section 2933.3[, subdivision] (d), expressly provided are to be applied retroactively. Section 59 is, at best, ambiguous on this point." (People v. Rodriguez, supra, 183 Cal.App.4th at p. 12.)
To sum up, we find nothing in Senate Bill No. 18 which provides the necessary "`clear and unavoidable implication negat[ing] the presumption [of prospective operation],'" set forth in section 3. (Evangelatos v. Superior Court, supra, 44 Cal.3d at p. 1208.)
(6) As a result, the presumption against retroactivity embodied in section 3 is not rebutted and the amendment to section 4019 applies prospectively only.

2. Equal protection analysis

Hopkins also argues, citing In re Kapperman (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657] (Kapperman) and People v. Sage (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874] (Sage), that the equal protection clause of the California Constitution mandates that the statute be applied retroactively. Again, we disagree.
Neither Kapperman nor Sage is applicable here. Kapperman held that an express prospective limitation upon the statute creating presentence custody credits was a violation of equal protection because there was no legitimate purpose to be served by excluding those already sentenced. (Kapperman, supra, 11 Cal.3d at pp. 544-545.) Kapperman is distinguishable because it addressed actual custody credits, not conduct credits. Conduct credits must be earned by a defendant, whereas custody credits are constitutionally required and awarded automatically on the basis of time served.
Sage is similarly inapposite, because it involved a prior version of section 4019 which allowed presentence conduct credits to misdemeanants, but not felons. (Sage, supra, 26 Cal.3d at p. 508.) The California Supreme Court found that there was neither "a rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons." (Ibid.) The purported equal protection violation at issue here is temporal, rather than based on defendant's status as a misdemeanant or felon.
(7) As discussed above, one of section 4019's principal purposes, both as formerly written and as amended, is to motivate good conduct. Hopkins and *628 those like him who were sentenced prior to the effective date of the amendment cannot be further enticed to behave themselves during their presentence custody. The fact that a defendant's conduct cannot be influenced retroactively provides a rational basis for the Legislature's implicit intent that the amendment only apply prospectively.
Accordingly, we find that Hopkins is only entitled to conduct credits as calculated under former section 4019. As we have determined that he is entitled to an additional 75 days of custody credit, he is further entitled to an additional 38 days of conduct credits under former section 4019.

III. Disposition

In appeal No. H034048, the order denying the motion for additional presentence credits is reversed, and the trial court is directed to enter a new order granting the motion and awarding an additional 75 days of actual custody credit under Penal Code section 2900.5 and an additional 38 days of conduct credits under Penal Code former section 4019. The trial court is further directed to prepare an amended abstract of judgment to reflect this modification and to forward the same to the Department of Corrections and Rehabilitation.
In appeal No. H033413, we affirm the judgment as modified above.
Rushing, P. J., and Elia, J., concurred.
NOTES
[1] All unspecified statutory references are to the Penal Code.
[2] Accordingly, we need not and do not reach Hopkins's constitutional claim.
[3] There was no preliminary hearing nor was the offense summarized in the probation report. The facts are therefore taken from the certified documents attached to Hopkins's motion for additional credits and other documents in the clerk's transcripts.
[4] EPRD is an acronym for earliest possible release date, which is calculated for each inmate by the CDCR. (§ 2932, subd. (e); Cal. Code Regs., tit. 15, § 3043, subd. (c)(5); Cal. Dept. of Corrections and Rehabilitation, Operations Manual (2010) § 73030.8.13.) After determining an inmate's maximum release date by taking the date of sentencing, adding the total prison term and subtracting any presentence credits awarded, the EPRD is determined by "subtract[ing] worktime credits the inmate has earned or is expected to earn in his current credit-earning status, add[ing] back any worktime credits that have been denied or lost through disciplinary actions, and subtract[ing] any denied or lost credits that have been restored." (In re Tate (2006) 135 Cal.App.4th 756, 759 [37 Cal.Rptr.3d 710].)
[5] 150 days from May 12, 2008, would be October 9, 2008. The period from May 12, 2008, to July 26, 2008, is only 75 days. We can only speculate how the CDCR calculated this tentative EPRD, however, since there is nothing in the record which explains it, nor do the parties address it in their briefs.
[6] Ordinarily, a disciplinary proceeding cannot result in the denial or forfeiture of credits where the time limitations set forth in the regulations have not been met. (Cal. Code Regs., tit. 15, § 3320, subd. (f).)
[7] "Exceptional Circumstances means circumstances beyond the control of the department or the inmate that prevent the inmate or requested witnesses from participating in the disciplinary hearing within established time limitations. Examples of this as applied to an inmate would include a serious temporary mental or physical impairment verified in writing by a licensed clinical social worker, licensed psychologist, psychiatrist, or physician. Some examples of exceptional circumstances preventing staff witnesses, to include the reporting employee, from attending the disciplinary hearing would be extended sick leave, bereavement leave, personal emergency, or extended military duty. Exceptional circumstances, as described above, would allow for suspension of time limitations pending resolution of the instances." (Cal. Code Regs., tit. 15, § 3000.)
[8] There is also a space on the form for an inmate to revoke a prior request for postponement. That space is blank on Hopkins's CDC 115.
[9] In the meantime, more of our sister courts have held that the amendment to section 4019 should apply retroactively. (People v. House (2010) 183 Cal.App.4th 1049; People v. Landon (2010) 183 Cal.App.4th 1096; People v. Delgado (2010) 184 Cal.App.4th 271; People v. Norton (2010) 184 Cal.App.4th 408; People v. Pelayo (2010) 184 Cal.App.4th 481.) However, the Fourth District Court of Appeal, Division Two, recently held that the amendment was not retroactive. (People v. Otubuah (2010) 184 Cal.App.4th 422.)
[10] If the defendant is required to register as a sex offender, is being committed to prison for, or has suffered a prior conviction of, a serious felony as defined in section 1192.7 or a violent felony as defined in section 667.5, the defendant may only accrue conduct credit at the rate of two days for every four days of custody. (§ 4019, subds. (b) & (c).)
[11] Such custody credit is also constitutionally required. (See In re Banks (1979) 88 Cal.App.3d 864, 867 [152 Cal.Rptr. 111] [state and federal equal protection guarantees are violated by denial of presentence actual time credit to indigent defendants].)