Filed 11/7/13  P. v. Maxwell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C066209 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F04551) |
| v. | |
| WILLIAM MAXWELL, | |
| Defendant and Appellant. | |

After the trial court denied defendant William Maxwell's motion to suppress (Pen. Code, § 1538.5), a jury convicted defendant of possession of cocaine base (Health & Saf. Code, § 11350) and possession of marijuana for sale (Health & Saf. Code, § 11359).  On appeal, he contends the trial court erred in denying his motion to suppress, as the search was conducted without a warrant and he was no longer on parole at the time of the search.  We requested supplemental briefing on the correct calculation of defendant's parole discharge date.  Defendant subsequently requested we permit him to file an additional supplemental briefing.  We granted his request.

1

We agree defendant was no longer on parole at the time of the search; however, as there was no evidence of reckless disregard of defendant's constitutional rights or systemic error, we find the good faith exception to the exclusionary rule applies. Accordingly, we affirm the judgment.

## BACKGROUND[1]

*Search*

On approximately June 12, 2009, a confidential informant told Sacramento Police Department narcotics detective Ryan Cleveringa that "Will," a parolee, was selling one-ounce quantities of cocaine base from his apartment. Detective Cleveringa ran a California Department of Corrections and Rehabilitation (CDCR) records check of the specified address. The records showed a William Maxwell lived at that address and was on active parole. In Cleveringa's experience, the database is sometimes wrong, so to "make sure [he] was not acting hastily," Cleveringa contacted defendant's parole agent, Elliott Beard. Beard checked defendant's parole status based on the Offender Based Information System (OBIS) and reviewed defendant's parole documents. Based on these reviews, Beard confirmed defendant was on active parole until June 17, 2009. Believing defendant was subject to a search condition incident to his parole status, on June 12, 2009, several officers conducted a warrantless search of defendant's apartment.

During the search, defendant advised officers he was on parole for robbery and was uncertain when his parole agent would drug test him. In the apartment, officers found two baggies containing 12 individually packaged bindles of cocaine base, four individually packaged baggies of marijuana and one baggie of marijuana in defendant's pocket, a purse containing 32 individually packaged baggies of marijuana and extra packaging identical to the marijuana packaging, and a bindle of cocaine base inside a

---

[1] Additional substantive facts underlying defendant's various convictions are not relevant to any issue raised on appeal and are not recounted.

jewelry box. Cleveringa informed Beard the officers had located narcotics in defendant's residence and had taken him into custody. Beard placed defendant on a parole hold and issued a request to "case records" to extend defendant's parole.

Defendant was charged with possession of cocaine base for sale (Health & Saf. Code, § 11351.5) and possession of marijuana for sale. The information further alleged defendant had five previous strike convictions (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and had served four prior prison terms (Pen. Code, § 667.5, subd. (b)). Defendant filed a motion to suppress the evidence obtained during the search, contending the search was performed without a warrant and there was no justification for the warrantless search. The People opposed the motion, contending the search was a lawful parole search. Defendant responded that his parole period had ended prior to the search.

*Parole Date*

Defendant was originally sentenced for robbery on December 13, 1993, to an aggregate term of 15 years. While in custody on that offense, he pleaded guilty to possessing a controlled substance in prison. As a result of that plea, on April 4, 2001, the trial court sentenced defendant to an additional consecutive four-year term. Defendant's maximum release date was August 6, 2012. Although defendant was released from prison on parole on May 14, 2006, his earliest possible release date (EPRD) was May 12, 2006. The EPRD is the date his parole period starts. Accordingly, defendant's controlling discharge date (CDD) was calculated as May 12, 2009, and his maximum discharge date was calculated as May 12, 2010.

On April 3, 2007, after conducting a discharge review, the Board of Parole Hearings (the Board) retained defendant on parole. On March 24, 2008, following an annual discharge review, the Board again retained defendant on parole.

Joyce Meeker, a correctional case records supervisor for CDCR at "Case Records North," testified that when defendant was discharged on parole, the CDD was calculated as May 12, 2009. In May 2008, pursuant to a number of legal decisions regarding the

3

calculation of custodial credits, including *In re Tate* (2006) 135 Cal.App.4th 756 (*Tate*), the CDCR audited defendant's parole file. Sue Fonner, the person who did the recalculation, was part of a group of employees specifically trained to perform these recalculations. Based on the audit, on May 17, 2008, the CDCR recalculated defendant's CDD as May 28, 2009. The normal procedure when the CDD is changed is to send a copy of any change in the CDD to the parole agent. There was no copy of this advisement in the record.

Meeker acknowledged the CDCR records reflected three errors in the entry of defendant's CDD. Specifically, there was some ongoing confusion whether defendant's discharge date was May 12 or May 14, 2009. In addition, there was at least one entry after the audit that erroneously reflected May 12, 2009, as the CDD rather than May 28, 2009. Meeker did not testify the audit was incorrectly calculated.

Defendant violated parole on January 9, 2009. The Board revoked his parole and extended his discharge date by 20 days. This parole revocation and time in custody changed defendant's CDD from May 28, 2009, to June 17, 2009. Meeker acknowledged there were some errors with corrections reflected in defendant's records; however, based on her review of the records, she had no doubt he was on active parole on June 12, 2009.

Charlotte Pastrana, a CDCR case records analyst, was responsible for some of the entries in the chronological history of defendant's CDCR central file. On June 16, 2009, she received a request from defendant's parole agent to extend defendant's discharge date 365 days pending the Board's decision whether to revoke parole due to a parole violation. She incorrectly calculated his final discharge date as 365 days from May 12, 2009, instead of the correct date of May 28, 2009. Based on her review of the records, she believed defendant remained on parole on June 12, 2009.

A February 13, 2009, CDCR report reflected the change in defendant's original parole date based on the audit and his new CDD based on his January 2009 parole

4

violation. That report shows an original parole release date of May 28, 2006, a 20 day parole revocation period, and a new CDD of June 17, 2009.

Beard was defendant's parole agent from April 20, 2009, until he was taken into custody. On May 8, 2009, Beard filed a visitation permit to allow defendant to visit his ailing father in Georgia. The permit reflected a parole date of May 12, 2006, and a CDD of June 17, 2009. Beard's chronological notes indicate that on May 26, 2009, he sought to transfer defendant's supervision and notes defendant's CDD as June 17, 2009. The transfer was rescinded because defendant's CDD was within 30 days. The notes also reflect that when Beard received the call from Cleveringa on June 12, 2009, he informed Cleveringa that defendant would be discharged from parole on June 17, 2009. Based on his review of the records, which included the OBIS, the field file, and the chronological history, Beard concluded defendant was due to be discharged from parole on June 17, 2009.

The trial court ruled defendant was on parole at the time of the search. The trial court found "all the official records show he was on parole on June 12, '09. [¶] . . . [¶] Not only that, by the way, but -- not only do the records all show he was on parole, every official from the Department of Corrections who was here all testified he was on parole that day. That's what the records show. [¶] It appears that the defendant, at the time that the search was conducted, admitted or felt or knew he was on parole." The trial court noted there was no evidence of a miscalculation in the May 2008 audit. The court also ruled, even assuming there was an error in the parole date, the good faith exception to the exclusionary rule applied. The court found (1) the Sacramento Police Department was entitled to rely on the representations from the Department of Corrections, and specifically defendant's parole agent; (2) the source of any errors was clerical personnel, not law enforcement officers; and (3) there was no evidence any errors were the result of grossly negligent or reckless conduct, or systemic errors; to the contrary, the court found the system of determining release dates is extremely complicated, and exhaustive,

5

detailed efforts and procedures were in place to protect inmates' rights.  Accordingly, the court denied the motion to suppress.

A jury found defendant guilty of possession of marijuana for sale and simple possession of a controlled substance.  In bifurcated proceedings, the court found four of the prior conviction allegations true.  The trial court sentenced defendant to a term of 10 years four months in prison.

## DISCUSSION

Defendant appeals his convictions, contending the trial court erred in denying his motion to suppress as his parole period had expired before the parole search was conducted.  As such, he continues, the search conducted without a warrant or probable cause was illegal.  The People contend defendant was on parole at the time of the search.  In the alternative, they contend the good faith exception applies.  We find the trial court erred in finding defendant remained on parole on June 12, 2009, the date of the search.  However, we agree the good faith exception applies to this case as there was no evidence of grossly negligent or reckless conduct or systemic errors.  Accordingly, we find no error in the denial of the motion to suppress.

"In reviewing the denial of a suppression motion, '[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence.' [Citation.]  'In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' [Citation.]"  (*People v. Pearl* (2009) 172 Cal.App.4th 1280, 1287.)

*Parole Date*—In 2001, as relevant to defendant, Penal Code section 3000, former subdivision (b)(1) provided:  "the inmate shall be released on parole for a period not exceeding three years . . . ."  Section 3000, former subdivision (b)(5) provided that upon the successful completion of parole, or at the end of the maximum statutory period of parole, "whichever is earlier, the inmate shall be discharged from custody.  The date of the maximum statutory period of parole under this subdivision and paragraph[] (1) . . .

6

shall be computed *from the date of initial parole and shall be a period chronologically determined.* Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation. However, in no case, except as provided in Section 3064, may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole . . . ." (Italics added.) That is, in the absence of the parolee's absconding or a parole revocation, three years is the maximum statutory period of parole. Thus, under the controlling statutes, defendant's date of initial parole was May 12, 2006, the date on which he was released from prison, and his controlling parole discharge date was May 12, 2009. Due to the 20 day revocation of parole, his controlling parole discharge date was extended to June 1, 2009. As indicated earlier, the CDCR audit suggests that defendant was released from prison early; thus, his CDD was May 28, 2009, and not May 12, 2009. The question then becomes, can a parolee's parole period be extended, without notice and beyond the statutory maximum period of parole, if it is subsequently determined he was released from prison early. The answer is "no."

It is true that time served in excess of a determinate term must be credited against a prisoner's parole period. (*In re Bush* (2008) 161 Cal.App.4th 133, 140-141.) The converse, however, is not necessarily true. " '[U]nder the present law the prison "term" is the actual time served in prison *before* release on parole, and the day of release on parole marks the *end* of the prison term. . . . [T]he period of parole is *not* part of a defendant's prison term, and the length of time an offender may remain on parole or may be incarcerated for a parole violation is measured by statutory provisions setting the maximum parole period for most offenses at three years and establishing the maximum period of confinement for a parole violation at one year.' (*People v. Jefferson* (1999) 21 Cal.4th 86, 95-96 [86 Cal.Rptr.2d 893, 980 P.2d 441]; see §§ 3000, subd. (b)(1), 3057,

7

subd. (a).)" (*People v. Nuckles* (2013) 56 Cal.4th 601, 608 (*Nuckles*).) "[A] convicted felon released on parole is subject to substantial restraints on his liberty and is deemed to remain in the constructive custody of the Department of Corrections and Rehabilitation. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1127 [116 Cal.Rptr.3d 723, 240 P.3d 204]; see *People v. Nicholson* (2004) 123 Cal.App.4th 823, 832 [20 Cal.Rptr.3d 476].)" (*Nuckles,* at p. 609.) These "restraints on liberty and constructive custody status further demonstrate that service of parole is part of the punishment imposed following a defendant's conviction." (*Id.* at p. 610.) A parolee's recognized liberty interest requires some procedural due process protections before that liberty is restrained and his period of parole is extended beyond the statutory maximum period. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481-482 [33 L.Ed.2d 484]; *In re Powell* (1988) 45 Cal.3d 894, 902 (*Powell*).) At a minimum, we believe this requires notice to the parolee of the changed CDD and the opportunity to administratively challenge that determination. (See *Morissey,* at pp. 483-489.)

The People have cited no authority, nor has independent research revealed any, which suggests that once an inmate has been released from prison, the CDCR can extend the date of the end of his prison term, and correspondingly his initial parole date, without notice based on a recalculation of credits earned and lost when the inmate was incarcerated.[2] Moreover, in the face of the statutory language that the maximum period of parole shall be calculated from the date of initial parole, we do not agree defendant's parole discharge date could be extended to June 17, 2009, as a result of the May 17,

---

[2] We express no opinion on whether the Board could have rescinded defendant's parole under Cal. Code Regs., tit. 15, § 2451, subd. (c) ["Fundamental errors occurred, resulting in the improvident granting of a parole date"] as the Board did not take this action upon discovering defendant's credit calculation had apparently resulted in an early release from prison and thereby an early initial date of parole. We observe, however, that the Board's power to rescind a parole date is subject to the prisoner's right to procedural due process. (*Powell*, *supra*, 45 Cal.3d at p. 902.)

8

2008, audit. Accordingly, we find defendant was discharged from parole on June 1, 2009, 11 days prior to the search.

***Good Faith Exception***

Defendant was discharged from parole 11 days before the search was conducted; therefore, the warrantless search violated the Fourth Amendment to the United States Constitution. We conclude, however, the good faith exception to the exclusionary rule applies to this case.

"The Fourth Amendment guarantees individuals the 'right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .' (U.S. Const., 4th Amend.) Under the Fourth Amendment, a warrantless search is unreasonable per se unless it falls within one of the 'specifically established and well-delineated exceptions.' [Citation.]" (*People v. Baker* (2008) 164 Cal.App.4th 1152, 1156-1157.)

We may exclude evidence obtained in violation of the Fourth Amendment only if exclusion is mandated by the federal Constitution. (Cal. Const., art. I, § 24 *People v. Robinson* (2010) 47 Cal.4th 1104, 1119 (*Robinson*).) The United States Supreme Court has made clear that exclusion is not a necessary consequence of a Fourth Amendment violation; rather, it "applies only where it ' "result[s] in appreciable deterrence." ' [Citation.]" (*Herring v. United States* (2009) 555 U.S. 135, 141 [172 L.Ed.2d 496] (*Herring*).) "Indeed, exclusion 'has always been our last resort, not our first impulse,' [citation] and our precedents establish important principles that constrain application of the exclusionary rule." (*Id*. at p. 140, quoting *Hudson v. Michigan* (2006) 547 U.S. 586, 591 [165 L.Ed.2d 56].) "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Herring*, *supra*,

9

555 U.S. at p. 144.) The exclusionary rule may apply to deter misconduct by either a parole officer or a CDCR data entry clerk, as they are adjuncts of law enforcement. (See *People v. Willis* (2002) 28 Cal.4th 22, 38; see also *People v. Ferguson* (2003) 109 Cal.App.4th 367, 374.) However, "when police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' [Citation.] In such a case, the criminal should not 'go free because the constable has blundered.' [Citation.]" (*Herring*, *supra*, 555 U.S. at pp. 147-148.) We uphold the trial court's factual determination as to recklessness or systemic error where it is supported by substantial evidence. (*Id*. at p. 147, fn. 5; *Robinson*, *supra*, 47 Cal.4th at p. 1126.)

We find exclusion would not deter the type of law enforcement mistakes made in this case. There is substantial evidence supporting the trial court's conclusion that this error was merely negligent and attenuated from the arrest; accordingly, the benefit of suppressing the evidence " 'would be marginal or nonexistent' [citation]." (See *Herring*, *supra*, 555 U.S. at pp. 138-139.)

Cleveringa made reasonable efforts to corroborate the information from a confidential informant by checking the CDCR records and contacting defendant's parole agent. Beard reviewed all the information available to him, including the database and defendant's parole documents. During the search, defendant also confirmed he was on parole. There was no misconduct in the actions of Cleveringa or Beard. The error here was committed by the case records clerk at the CDCR.

There is no question, as amply demonstrated by this record on appeal, that the system for calculating credits and the EPRD while a defendant remains incarcerated is complicated and continually subject to change throughout the defendant's period of incarceration. (*Tate*, *supra*, 135 Cal.App.4th 756; *In re Fain* (1976) 65 Cal.App.3d 376, 390-392.) The error in this case came as a result of the CDCR's making a "massive" effort in May 2008 to comply with the dictates of *Tate*. The CDCR provided special

10

training to the analysts performing these audits. The record does not demonstrate this training was inadequate or that there was an error in the calculation of defendant's credits; rather, the error was in applying that recalculation to extend defendant's parole period beyond the statutory maximum and without due process.[3] As a result of the audit, the CDCR determined defendant had been released from prison 16 days early. Accordingly, the clerk extended his initial parole date by 16 days. Although we have found there is no authority for extending the parole date, we note there is no express prohibition of such an extension. In the absence of such an express prohibition, we cannot say that the clerk's conduct in extending the date was done in reckless disregard of defendant's constitutional rights or that it was part of systemic negligence. Although errors were made, the evidence supports the trial court's conclusion that the law enforcement employees acted conscientiously and tried to follow the legal requirements in calculating the correct parole discharge dates. (See *Robinson*, *supra*, 47 Cal.4th at pp. 1126-1129.)

Furthermore, any error in extending the parole date was made well before law enforcement had information from the confidential informant that defendant was selling drugs. Contrary to defendant's claim, the contemporaneous records demonstrate that Beard and the CDCR believed defendant's parole date had been validly changed to June 17, 2009. In February 2009 a CDCR report reflected an original parole release date of May 28, 2006, and a CDD of June 17, 2009. As early as May 2009 Beard's contemporaneous records make repeated references to defendant's parole CDD as June 17, 2009. The notes also reflect that when he received the call from Cleveringa, Beard informed him defendant would be discharged from parole on June 17, 2009. At

---

[3] Our finding that there was no authority to extend defendant's initial parole date after he had been released from prison is not a determination that the underlying calculation itself was incorrect.

11

the time the errors here were made, neither Beard nor the CDCR clerks were engaged in the " 'often competitive enterprise of ferreting out crime' [citation]." (*Pennsylvania Bd. of Probation and Parole v. Scott* (1998) 524 U.S. 357, 368 [141 L.Ed.2d 344].)

On this record, we find substantial evidence supports the trial court's conclusion that the errors here were the result of negligence, not recklessness or systemic errors. There is no indication the CDCR clerks were reckless in maintaining the database or calculating the parole discharge date, or that they knowingly made false entries to lay the groundwork for future false arrests. (See *Herring*, *supra*, 555 U.S. at p. 146.) The entries were made by clerks, not law enforcement officers pursuing an arrest or criminal investigation, and were made over a year before police searched defendant's home. As in *Herring*, "the error was the result of isolated negligence attenuated from the arrest." (*Id.* at p. 137.) Thus, the police conduct is not sufficiently deliberate or culpable that exclusion would meaningfully deter it, and the good faith exception to the exclusionary rule applies.

## DISPOSITION

The judgment is affirmed.

       RAYE       , P. J.

We concur:

    MAURO    , J.

    HOCH    , J.

12