[No. G042807. Fourth Dist., Div. Three. Dec. 2, 2009.]

In re ADRIAN GOMEZ on Habeas Corpus.

## Counsel

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Heather Bushman and Gregory J. Marcot, Deputy Attorneys General, for Appellant Department of Corrections and Rehabilitation.

Ronald G. Brower, John D. Barnett and Mark W. Fredrick for Respondent Adrian Gomez.

## OPINION

**IKOLA, J.**—California's Department of Corrections and Rehabilitation (the Department), by Ron Barnes, warden of the California Correctional Center, petitions for a writ of supersedeas. This petition presents the question of whether Penal Code section 2933.1, subdivision (a) (section 2933.1(a)),[1] limits the postsentence credits that can be accrued under sections 2933 and 2933.3 when a criminal defendant has been convicted of a " 'violent felony' " (§ 667.5, subd. (c)), but is not serving a sentence pursuant to the violent felony conviction because such sentence was stayed pursuant to section 654. The trial court granted Adrian Gomez's petition for writ of habeas corpus, quite properly ruling that *In re Phelon* (2005) 132 Cal.App.4th 1214 [34 Cal.Rptr.3d 276] (*Phelon*), the only published case on this issue not superseded by a grant of review, compelled such a result. Courts, including this one, have disagreed with the rationale and holding of *Phelon*, and the Supreme Court has granted review of two cases to settle this controversy. (See *People v. Duff*, review granted Aug. 29, 2007, S153917; *In re Pope*, review granted Apr. 9, 2008, S160930.) We agree with *Phelon* and therefore deny the petition for writ of supersedeas. Section 2933.1(a) has no effect when the only violent felony conviction at issue is stayed pursuant to section 654.

## FACTS

On May 19, 2007, Gomez lost control of his vehicle and crashed into a tree. His best friend, riding in the passenger seat, was killed.

On June 13, 2008, Gomez pleaded guilty to all four counts alleged against him in the felony complaint: (1) gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); (2) vehicular manslaughter while intoxicated (§ 191.5, subd. (b)); (3) driving under the influence causing bodily injury (Veh. Code, § 23153, subd. (a)); and (4) driving under the influence with a blood-alcohol content of 0.08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b)). All four of these counts pertain to the same victim, Derek Walters.[2] As to the latter two counts for driving under the influence, Gomez admitted charged enhancements under section 12022.7, subdivision (a), for personally inflicting great bodily injury on his victim.

---

[1] All statutory references hereafter are to the Penal Code unless otherwise stated.

[2] The parties do not address why Gomez pleaded guilty to what appear to be lesser included offenses in the felony complaint. (See *People v. Miranda* (1994) 21 Cal.App.4th 1464, 1468 [26 Cal.Rptr.2d 610] [reversing convictions for vehicular manslaughter (§ 192, subd. (c)(2)) and driving under the influence causing bodily injury (Veh. Code, § 23153, subd. (a)) as lesser included offenses of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a))].) The only contested issue at the plea hearing was whether Gomez would be subject to section 2933.1(a) while serving his sentence. Thus, it appears this case is a manufactured controversy,

The sentencing court sentenced Gomez to four years in state prison. This sentence represents the low term for count one, gross vehicular manslaughter while intoxicated. (§ 191.5, subd. (c)(1) [four, six, or 10 years].) The sentencing court stayed sentencing on the remaining counts in accordance with section 654; the court did not actually select a sentence for any of the remaining counts. The sentencing court acknowledged Gomez was entitled to 235 days of credit for time served. But the court commented it would not "calculate any good time/work time credits; it is leaving it to the Department of Correction to calculate those credits and based on case law is assuming that it will be at 15 percent, since the court is staying any enhancement and not dismissing any enhancement." Thus, Gomez faced a maximum of approximately three years and 130 days of prison time, subject to any potential worktime credit.

"The Department calculates an earliest possible release date (EPRD) for each inmate. [Citations.] To do so, it starts with the date of sentencing, adds the total prison term imposed, and subtracts any presentence credit awarded. This establishes a maximum release date. From this date, the Department subtracts worktime credits the inmate has earned or is expected to earn in his current credit-earning status, adds back any worktime credits that have been denied or lost through disciplinary actions, and subtracts any denied or lost credits that have been restored. The result is the EPRD, with the proviso that it cannot exceed the maximum release date calculated from the total prison term less presentence credits. [Citation.] The EPRD is predictive, in that it is subject to change." (*In re Tate* (2006) 135 Cal.App.4th 756, 759 [37 Cal.Rptr.3d 710] (*Tate*).)

On July 16, 2008, the Department classified Gomez as an inmate eligible to receive full postconviction conduct credit with an earliest possible release date of February 21, 2010. The Department also informed Gomez he was eligible for and could volunteer to serve his time at one of its fire camps that would qualify him to receive additional conduct credit pursuant to section 2933.3. Gomez was assigned to a fire camp and began training there on February 5, 2009. Gomez was then told his earliest possible release date would be October 17, 2009. Gomez has fought in at least six forest fires to date and continues to reside at the fire camp.

On April 16, 2009 (a little more than two months after being told he would be eligible for release on Oct. 17, 2009), the Department informed Gomez his release date had been recalculated pursuant to section 2933.1. The

in that Gomez could not have been convicted of more than one of the counts alleged against him had he not entered into a plea bargain.

Department now calculated his earliest possible release date as April 23, 2011. The Department rejected Gomez's administrative appeal of this decision.

Gomez petitioned the trial court and it granted the petition for writ of habeas corpus on October 16, 2009. The court directed the Department "to grant additional post-sentence conduct credit in accordance with [sections] 2933 and . . . 2933.3, to recalculate his release date, and if he is overdue for release, to release him immediately on parole." The Department appealed and petitioned this court for a writ of supersedeas staying the trial court's order pending the resolution of the Department's appeal. We issued a temporary stay and set the matter for hearing after further briefing.

## DISCUSSION

"Where an application for a writ of habeas corpus has been made by or on behalf of any person other than a defendant in a criminal case, an appeal may be taken to the court of appeal from a final order of a superior court granting all or any part of the relief sought . . . . [T]he court in which the appeal . . . is pending may, in its discretion, and upon such conditions as it deems just stay the execution of the order pending final determination of the matter." (§ 1507.) A petitioner seeking a writ of supersedeas has the burden of showing probable error in the trial court's order. (*Saltonstall v. Saltonstall* (1957) 148 Cal.App.2d 109, 114 [306 P.2d 492].)

The facts in this case are straightforward and undisputed. The primary issue on appeal is whether the court properly interpreted section 2933.1(a), an issue we review de novo. (*In re Collins* (2001) 86 Cal.App.4th 1176, 1181 [104 Cal.Rptr.2d 108] ["basic principles of appellate review apply to an appeal from an order granting a petition for habeas corpus . . ."].) Thus, in considering the Department's petition, we cannot avoid focusing on the merits of the parties' respective interpretations of section 2933.1(a), as it would be unjust to stay execution of the trial court's order if Gomez is correct in arguing he should be released from prison immediately.

*Text of Pertinent Statutes*

"It is the intent of the Legislature that persons convicted of a crime and sentenced to the state prison under Section 1170 serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections. . . . For every six months of full-time performance in a credit qualifying program . . . a prisoner

shall be awarded worktime credit reductions from his or her term of confinement of six months. A lesser amount of credit based on this ratio shall be awarded for any lesser period of continuous performance." (§ 2933, subd. (a).) The Department's initial estimated earliest release date of February 21, 2010, was based on the expectation that Gomez was eligible for and would participate in programs qualifying him to receive one day of worktime credit for each day served in prison.

"Notwithstanding any other provision of law, any inmate assigned to a conservation camp by the Department of Corrections *who is eligible to earn one day of worktime credit for every one day of service pursuant to Section 2933* shall instead earn two days of worktime credit for every one day of service." (§ 2933.3, italics added.) The Department's second estimated earliest release date of October 17, 2009, was based on the belief that Gomez was eligible for and would participate in a qualifying section 2933.3 program, which would entitle him to receive two days of credit for each day served in such program.

"Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." (§ 2933.1(a).) The Department's third (and final) estimated earliest release date of April 23, 2011, is based on the supposition that Gomez was subject to section 2933.1(a) and therefore ineligible to receive more than 15 percent of worktime credit under section 2933. This analysis also precludes Gomez from receiving extra credit for his fire camp participation.

None of the substantive offenses for which Gomez was convicted is listed in section 667.5, subdivision (c), as a " 'violent felony.' " However, "[a]ny felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7" is a " 'violent felony.' " (§ 667.5, subd. (c)(8).) Gomez admitted the truth of two section 12022.7 "great bodily injury" enhancements, which attached to his two driving under the influence convictions. Thus, two of the felonies to which Gomez pleaded guilty and was convicted were " 'violent felon[ies]' " under section 667.5, subdivision (c).

Nevertheless, Gomez has not actually served a sentence for those " 'violent felon[ies].' " "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) In compliance with section 654 (and the plea bargain), the

sentencing court chose the crime with the longest potential term of imprisonment and sentenced Gomez under that provision, staying the sentences of the other counts. Gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), the crime for which Gomez is serving his sentence, is not a " 'violent felony.' "

*Reeves*

Before analyzing the issue before us, it is helpful to first discuss *In re Reeves* (2005) 35 Cal.4th 765 [28 Cal.Rptr.3d 4, 110 P.3d 1218] (*Reeves*). A court sentenced Reeves to two concurrent sentences: 10 years in prison on a nonviolent offense (possession of a controlled substance for sale, plus enhancements) and five years in prison on a violent offense (assault with a deadly weapon, plus enhancements). (*Reeves*, at p. 769.) The parties disagreed as to how section 2933.1(a) applied to Reeves's sentence.

The court first noted that its "effort to apply [the] seemingly plain language [of section 2933.1(a)] to the case at hand reveals ambiguities the Legislature apparently did not foresee." (*Reeves, supra*, 35 Cal.4th at p. 770.) The court identified four possible interpretations of section 2933.1(a): (1) the 15 percent limitation applies to any sentence of an individual who has *ever* been convicted of a violent felony as a matter of historical fact (i.e., once convicted of a violent felony, an individual can never in his life obtain more than 15 percent worktime credit); (2) the 15 percent limitation applies to the entirety of concurrent sentences when at least one sentence included therein is based on a violent felony conviction (the Department's position); (3) the 15 percent limitation applies only to a violent felony conviction sentence and does not apply at all to other concurrent sentences (Reeves's position—i.e., a separate tally of worktime credit should be kept for each concurrent sentence depending on the categorization of the underlying crime); or (4) the 15 percent limitation applies to any sentences served while a violent felony sentence is being served, but is no longer applicable once the violent felony sentence is completed. (*Reeves*, at pp. 771–780.)

After rejecting each of the first three alternatives as inconsistent with the language and/or purpose of section 2933.1(a) and other relevant statutes, the *Reeves* court held the fourth option was correct: "Section 2933.1(a) limits to 15 percent the rate at which a prisoner convicted of and serving time for a violent offense may earn worktime credit, regardless of any other offenses for which such a prisoner is simultaneously serving a sentence. On the other hand, section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section. [¶] . . . Under our interpretation, petitioner will accrue credit at the rate of 15 percent against his first five years in prison and

at the rate of 50 percent for his second five years. . . . Our interpretation is fair and reasonable . . . because it imposes a real restriction on a violent offender's ability to earn worktime credits, and . . . because the restriction ends when the term for the violent offense has been served." (*Reeves, supra,* 35 Cal.4th at pp. 780–781, fns. omitted.)

*Reeves* contrasted its holding with a situation in which a defendant is sentenced to a consecutive sentence based on both violent and nonviolent felonies: "We may confidently assume that an offender serving a sentence that combines *consecutive* terms for violent and nonviolent offenses is subject to the credit restriction imposed by section 2933.1(a) for the entire sentence. Under the Determinate Sentencing Act (§ 1170 et seq.), multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' (§ 1170.1, subd. (a)) that merges all terms to be served consecutively and complies with the rules for calculating aggregate terms . . . , whether or not the consecutive terms arose from the same or different proceedings [citations]." (*Reeves, supra,* 35 Cal.4th at pp. 772–773; see also *People v. Ramos* (1996) 50 Cal.App.4th 810, 814–817 [58 Cal.Rptr.2d 24] [prisoner sentenced to 22-year single aggregate term based on violent felonies and one nonviolent felony is subject to § 2933.1, subd. (c), with regard to all presentence credits]; but see *Tate, supra,* 135 Cal.App.4th at pp. 764–765 [prisoner serving violent felony sentence who subsequently commits nonviolent felony in prison is not subject to 15 percent credit limitation on nonviolent term because the consecutive sentence in such a case runs separate from original commitment offense].)

*The Parties' Interpretations of Section 2933.1(a)*

The Department contends the trial court in this case erred because section 2933.1(a) unambiguously requires the application of a 15 percent limitation of worktime credit to Gomez's sentence. By the Department's reckoning, the Legislature clearly expressed its preference that "any person who is convicted" of a " 'violent felony' " is subject to the worktime credit limitations of section 2933.1(a). (See *Reeves, supra,* 35 Cal.4th at p. 771 ["The Legislature wished to protect the public by delaying the release of prisoners convicted of violent offenses."].) Here, Gomez was convicted of a violent felony. There is no textual requirement in section 2933.1(a) that the "person who is convicted" of a violent felony serve a sentence imposed pursuant to the violent felony.

Gomez points to *Phelon, supra,* 132 Cal.App.4th 1214, in which the identical legal issue to that presented here arose. The *Phelon* court relied on *Reeves, supra,* 35 Cal.4th 765, for guidance, in particular the *Reeves* court's observation that " 'section 2933.1(a) has no application to a prisoner who is

not actually serving a sentence for a violent offense . . . .' " (*Phelon*, at p. 1219, italics omitted.) The *Phelon* court concluded that "[u]nder *Reeves*, petitioner's postsentence credits should not be limited by section 2933.1(a) because his sentences on the qualifying violent offenses were stayed pursuant to section 654. The sentence that petitioner is actually serving is not one that qualified as a violent offense at the time it was committed." (*Ibid.*) The Department argues *Phelon* erred by applying *Reeves*'s holding to a case with a completely different fact pattern—to wit, a section 654 issue rather than a concurrent sentence issue.

*Applying Section 2933.1 When Violent Felony Sentence Stayed*

*Reeves* identified and resolved latent ambiguities in the language of section 2933.1(a). It is worth reformulating for use in this case the three possible interpretations[3] of section 2933.1(a) set forth in *Reeves*: (1) the 15 percent limitation applies to Gomez's entire sentence because Gomez was convicted of a violent felony (the Department's position); (2) the 15 percent limitation does not apply at all to Gomez's sentence because sentences on the only violent felony convictions were stayed pursuant to section 654 (Gomez's position); or (3) the 15 percent limitation applies only until the end of Gomez's violent felony sentence had it not been stayed but instead imposed concurrently (the *Reeves* rule for concurrent sentences, adapted to this case).[4]

The Department correctly points out that *Reeves* was not a case in which a violent felony was stayed pursuant to section 654. But the Department does not explain why this court should be free to ignore the interpretation of section 2933.1(a) set forth in *Reeves*, i.e., "section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense . . . ." (*Reeves, supra,* 35 Cal.4th at p. 780.) We will not interpret section 2933.1(a) to mean something different from the Supreme Court's interpretation, regardless of the difference in the underlying facts in this case. The interpretation of a statute should not vary depending upon the facts to which it is applied. The *Reeves* interpretation is also the simplest (and thus arguably the best) interpretation to adopt. Worktime credits can only be applied to the sentence being served. And when no violent felony sentence is being served, no credits are being earned against that sentence, and thus there is nothing upon which the limitation in section 2933.1(a) can apply.

---

[3] Pursuant to *Reeves*, we reject at the outset an interpretation of section 2933.1(a) that "would disqualify, for all time, any person who has ever been convicted of a violent offense from earning more than 15 percent worktime credit." (*Reeves, supra,* 35 Cal.4th at p. 771.)

[4] Under the third option, Gomez himself might not benefit. It is unclear because the sentencing judge did not actually select a sentence for the counts stayed pursuant to section 654. A section 12022.7, subdivision (a), enhancement entails a mandatory three-year consecutive sentence.

The Department's interpretation of section 2933.1(a) would result in Gomez being subject to a harsher rule of law than if he had been sentenced concurrently to a violent felony.[5] Our Supreme Court "has long struggled with the problem of permitting multiple convictions while protecting the defendant from multiple punishment. Some of [the court's] earlier decisions held that the imposition of concurrent sentences sufficiently protected the defendant from multiple punishment because he would be serving each of his sentences simultaneously." (*People v. Pearson* (1986) 42 Cal.3d 351, 359 [228 Cal.Rptr. 509, 721 P.2d 595].) The court later barred concurrent sentences for convictions subject to section 654, reasoning "that concurrent sentences still amounted to punishment under more than one provision, prohibited under section 654, and could prejudice the defendant in various ways" under habitual offender laws. (*Pearson*, at p. 360.) Considering the evolution of the requirement that trial courts stay execution of sentence under section 654 rather than impose concurrent sentences, the Department's proposed rule is untenable.

The only other possibility is to mechanically apply the disposition of *Reeves* to this case, which, for good reason, none of the parties suggest. In other words, Gomez would be subject to a 15 percent limitation on credits against his nonviolent sentence until he completed his *hypothetical* concurrent sentences for violent felonies. But such a rule would ignore the obvious fact that Gomez is not actually serving a sentence for his violent felony convictions. Section 2933.1(a) can only affect the accrual of worktime credits if a prisoner is serving a violent felony sentence.

■ In sum, we agree with *Phelon*'s application of *Reeves* to section 654 cases: " 'section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense . . . .' " (*Phelon, supra*, 132 Cal.App.4th at p. 1219, italics omitted.) As such, we deny the Department's petition for writ of supersedeas. The Department should comply with the trial court's order immediately.[6]

---

[5] Theoretically, at least—as explained in the previous footnote, Gomez might not benefit from the application of the *Reeves* concurrent sentence rule as compared with the Department's proposed rule in this case.

[6] This result is particularly appropriate in light of the quirk in the law that labels driving under the influence causing bodily injury, with a "great bodily injury" enhancement, a " 'violent felony,' " while excluding from the list of " 'violent felon[ies]' " the more serious charge of gross vehicular *manslaughter* while intoxicated. (§ 667.5, subd. (c).) Of course, the flip side of this incongruity is that Gomez conceivably could have been subject to the 15 percent limitation had his victim not died, as he may have been sentenced under an allegation that could carry a "great bodily injury" enhancement under section 12022.7. But the anomaly only suggests that classifying Gomez's act as a violent felony might not have been the result intended by those enacting the statutory scheme.

## DISPOSITION

We deny the Department's petition for writ of supersedeas. The temporary stay is lifted.

Bedsworth, Acting P. J., and Aronson, J., concurred.