[No. H034191. Sixth Dist. Apr. 6, 2011.]

In re CRAIG HUNTER BORLIK on Habeas Corpus.

## COUNSEL

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca and Sara J. Romano, Deputy Attorneys General, for Plaintiff and Appellant The People.

Edward Mahler for Defendant and Respondent Craig Hunter Borlik.

## OPINION

**ELIA, Acting P. J.**—Ron Barnes, acting warden at the California Correctional Center in Susanville appeals from an April 24, 2009 order of the Santa Clara County Superior Court granting Craig Hunter Borlik's petition for writ of habeas corpus.[1] For reasons that follow, we reverse the order of the superior court.

---

[1] Generally, although a habeas corpus petition is "directed to the person having custody of or restraining the person on whose behalf the application is made" (Pen. Code, § 1477), in his habeas corpus petition, Borlik challenged the actions of California's Department of Corrections and Rehabilitation (CDCR). Accordingly, we refer to appellant as the CDCR.

*Background*

On May 25, 2005, while intoxicated, Craig Borlik (Borlik) ran a red light and struck a 72-year-old bicyclist who was crossing the street. Three weeks later, the cyclist died of his injuries.

Borlik pleaded no contest to four felony charges arising from the incident: gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a)), driving with a blood-alcohol concentration (BAC) of 0.08 percent or greater causing bodily injury (Veh. Code, § 23153, subd. (b)), hit and run where the injury resulted in death or injury to another person (Veh. Code, § 20001, subd. (a)) and endangering a child (Pen. Code, § 273a, subd. (a)).[2] Borlik admitted that while driving with a BAC of 0.08 percent or greater, he personally caused serious bodily injury within the meaning of Penal Code section 12022.7.

On June 23, 2006, the superior court sentenced Borlik to the midterm of six years on the vehicular manslaughter charge and imposed concurrent midterm sentences of two years for the hit and run and four years for endangering a child. Pursuant to Penal Code section 1385[3] and a plea agreement, the court struck the punishment for the great bodily injury enhancement associated with driving with a BAC of 0.08 percent or greater and imposed, but stayed, a two-year prison term on this count pursuant to section 654.[4]

Borlik was remanded to custody to begin serving his sentence. Initially, the CDCR calculated Borlik's earliest possible release date (EPRD) at July 5, 2009. Thereafter, the CDCR recalculated Borlik's EPRD as October 9, 2008. On October 6, 2008, the CDCR recalculated Borlik's EPRD as July 28, 2011, "Per In Re Pope decision."

Subsequently, Borlik filed an inmate appeal, citing *In re Phelon* (2005) 132 Cal.App.4th 1214 [34 Cal.Rptr.3d 276], for the proposition that the CDCR had miscalculated his credits and that he should be released immediately. The appeal was denied at the final level of review.

---

[2] It appears that Borlik had his son in the car.

[3] All unspecified section references are to the Penal Code.

[4] "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) When convictions for two or more offenses are subject to section 654, the court sentences the defendant on the one providing the longest punishment and then imposes and stays the terms on the others. (*People v. Miller* (1977) 18 Cal.3d 873, 886 [135 Cal.Rptr. 654, 558 P.2d 552], overruled on other grounds as recognized in *People v. Oates* (2004) 32 Cal.4th 1048, 1067, fn. 8 [12 Cal.Rptr.3d 325, 88 P.3d 56].)

*Proceedings Below*

Borlik filed a petition for writ of habeas corpus in Shasta County Superior Court. The case was transferred to Santa Clara County Superior Court on March 5, 2009. Thereafter, on April 24, 2009, the Santa Clara County Superior Court granted the petition. The court mandated that the CDCR recalculate Borlik's release date and if he was eligible for release, to release him immediately on parole. In addition, the court ordered that the CDCR was to apply any time that Borlik spent in prison past his release date to his parole term.

On May 1, 2009, in addition to filing a notice of appeal, the CDCR filed a request to stay the superior court's order, which the superior court granted temporarily until May 8, 2009. On August 7, 2009, this court summarily denied the CDCR's petition for writ of supersedeas and vacated a temporary stay issued May 8, 2009.

*Issue Presented*

The CDCR frames the issue in this case as follows: Does section 2933.1, subdivision (a)'s 15 percent credit earning limitation apply to a prisoner whose single course of conduct led to convictions for violent and nonviolent offenses, of which the resulting sentence for the violent felony was struck by the superior court and the underlying substantive offense was stayed pursuant to section 654?

*Standard of Review*

Since this appeal concerns a matter of law—whether or not Borlik's sentence is subject to the 15 percent credit-earning limitation under section 2933.1, we review this matter de novo. (*Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].) Further, when the lower court reaches a decision based on the pleadings and attached exhibits, as in this case, we independently review the record. (*In re Smith* (2003) 114 Cal.App.4th 343, 360–361 [7 Cal.Rptr.3d 655].)

*Discussion[5]*

The CDCR argues that because Borlik was convicted of a violent felony he is ineligible to receive worktime credits in excess of 15 percent.

---

[5] Before we address the merits of this case, we point out that the CDCR claims that it is appealing from a final order of the superior court made upon the return of a writ of habeas corpus, which is authorized by section 1507. Section 1507 applies to cases other than criminal cases. However, the CDCR's appeal is authorized by section 1506.

To provide a framework for addressing this argument it is necessary to describe generally the statutory scheme regarding how a defendant serving a prison sentence earns custody credits against his term of imprisonment.

■ During the time Borlik was incarcerated, defendants convicted of a crime and sentenced to a determinate term in state prison, were required to "serve the entire sentence imposed by the court, except for a reduction in the time served in the custody of the Director of Corrections for performance in work, training or education programs established by the Director of Corrections." (Former § 2933, subd. (a).) Worktime credits were applied "for performance in work assignments and performance in elementary, high school, or vocational education programs." (Former § 2933, subd. (a).) Thus, for "every six months of full-time performance in a credit qualifying program" a prisoner was "awarded worktime credit reductions from his or her term of confinement of six months." (Former § 2933, subd. (a), added by Stats. 1982, ch. 1234, § 4, p. 4551.)[6] Accordingly, it was possible for a prisoner to receive a 50 percent reduction in his sentence pursuant to this section.

Nevertheless, for specified felons, section 2933.1 limits the accrual of worktime credits to 15 percent. Specifically, section 2933.1, subdivision (a) provides, "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." Relevant here, a violent felony "shall mean . . . [¶] . . . [¶] Any felony in which the defendant inflicts great bodily injury on any person other than an accomplice . . . ." (§ 667.5, subd. (c)(8).) Thus, pursuant to section 2933.1, subdivision (a), persons who have been convicted of qualifying violent felonies may earn credit against their term of no more than 15 percent.

The CDCR contends that because Borlik was "convicted of a great bodily injury enhancement, Borlik 'is convicted' of a violent felony under section 2933.1's plain meaning."

■ Recently, while this appeal was pending, the California Supreme Court agreed with the CDCR. In *In re Pope* (2010) 50 Cal.4th 777 [114 Cal.Rptr.3d 225, 237 P.3d 552] (*Pope*), the Supreme Court had to decide how to apply the section 2933.1 statutory limitation when a prisoner has been convicted of and sentenced for both qualifying and nonqualifying offenses but, although sentence has been imposed for both types of offense, execution of sentence has been stayed with respect to the qualifying offenses pursuant to the provisions of section 654. (50 Cal.4th at p. 779.) The Supreme Court

---

[6] During the pendency of this appeal section 2933 has been amended twice—once effective January 25, 2010 (Stats. 2009, 3d Ex. Sess., ch. 28, § 38) and again effective September 28, 2010 (Stats. 2010, ch. 426, § 1).

concluded that when a defendant is convicted of and sentenced for both qualifying and nonqualifying offenses and a sentence has been imposed for both types of offense, even though execution of sentence has been stayed with respect to the qualifying offenses pursuant to the provisions of section 654, the defendant is still subject to the limitations imposed by section 2933.1, subdivision (a). (50 Cal.4th at p. 779.)

In *Pope*, the defendant, Nathan Pope (Pope), drove his vehicle at a high rate of speed and against a red light into an intersection in Fresno. His automobile struck another vehicle, rupturing its gasoline tank and causing a fire that killed the vehicle's occupant. Pope's blood-alcohol level was 0.25 percent and his blood contained evidence of ingestion of cocaine. (*Pope, supra*, 50 Cal.4th at p. 780.)

Pope pleaded guilty to one count of driving under the influence of alcohol or drugs, causing injury (Veh. Code, § 23153, subd. (a)), and one count of driving with an unlawful blood-alcohol level, causing injury (Veh. Code § 23153, subd. (b)). As to each of these counts, he admitted enhancement allegations that the offenses caused great bodily injury. (§ 12022.7, subd. (a).) Similar to this case, by virtue of the enhancement allegations, each of these two counts constituted a qualifying violent felony for the purpose of the credit restrictions imposed by section 2933.1, subdivision (a). In addition to the driving-under-the-influence offenses, Pope pleaded guilty to gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)), which is not a qualifying violent felony for the purpose of the credit restrictions imposed by section 2933.1, subdivision (a). (*Pope, supra*, 50 Cal.4th at p. 780.)

The trial court imposed sentence on all three counts, but, similar to this case, pursuant to section 654 stayed execution of sentence for the offenses carrying the shorter term. Since the offense of gross vehicular manslaughter while intoxicated carries a longer term of imprisonment than the driving-under-the-influence offenses of which Pope stood convicted, the trial court sentenced the defendant to the middle term of six years for the gross vehicular manslaughter conviction, and imposed but stayed execution of a sentence of five years for each of the driving-while-under-the-influence offenses. (*Pope, supra*, 50 Cal.4th at p. 780.)

The CDCR concluded that the 15 percent restriction applied to Pope's entire sentence because of his status as a person who was convicted of a qualifying violent felony. According to the CDCR, the amount of credit Pope could earn against his six-year term for the nonqualifying offense was limited to 15 percent of that term. Pope challenged the CDCR's calculation, arguing that because the court stayed execution of sentence for the offenses that would bring him within the terms of section 2933.1, subdivision (a), the

restriction imposed by section 2933.1, subdivision (a) was inapplicable to any portion of his six-year term for the nonqualifying offense. Thereafter, Pope filed a petition for writ of habeas corpus, and the trial court agreed with Pope's argument, relying upon *In re Phelon, supra,* 132 Cal.App.4th 1214. The CDCR appealed from the order granting the petition for writ of habeas corpus. The Court of Appeal disagreed with the trial court, agreed with the CDCR, concluded that *In re Phelon* had been decided incorrectly, and vacated the order granting the petition for writ of habeas corpus. (*Pope, supra,* 50 Cal.4th at pp. 780–781.)

The Supreme Court granted review. (*Pope, supra,* 50 Cal.4th at p. 781.) In the Supreme Court, Pope contended that because execution of sentence for his qualifying offenses was stayed pursuant to section 654 pending completion of the longer term for the nonqualifying offense, he was not a person who has been convicted of a qualifying offense within the meaning of section 2933.1, subdivision (a). Relying on another Supreme Court case, *In re Reeves* (2005) 35 Cal.4th 765 [28 Cal.Rptr.3d 4, 110 P.3d 1218] (*Reeves*), Pope claimed he was not " 'convicted' " of the qualifying offense, because his custody was not attributable to the stayed term for the qualifying offense. (*Pope, supra,* at p. 782.)

In *Pope,* the Supreme Court explained that in *Reeves* the question before the court was whether the limitation upon worktime credit found in section 2933.1, subdivision (a) applied to limit a prisoner's ability to earn credit during his entire term, including the longer 10-year term for the nonqualifying felony. (*Pope, supra,* 50 Cal.4th at p. 783.)

█ The *Pope* court noted that it had begun the analysis in *Reeves* "by observing that the 'case turn[ed] on the meaning of the phrase "any person who is convicted of a [violent] felony offense . . . ." (§ 2933.1, subdivision (a).)' [Citation.] The phrase 'is convicted' in that context had only two possible meanings: (1) a conviction that was current, in the sense that it still gave the state the right to confine the prisoner in physical custody, or (2) the historical fact of conviction." (*Pope, supra,* 50 Cal.4th at p. 783.)

The *Pope* court explained that in *Reeves,* the decision "began and ended with an examination of the statutory term 'is convicted.' (§ 2933.1(a).)" (*Pope, supra,* 50 Cal.4th at p. 783.) Thus, contrary to Pope's claim, the court "did not purport to adopt a broad rule to the effect that a statute limiting credits on account of a qualifying offense applies only to confinement that is attributable to that offense." (*Ibid.*) The *Pope* court went on to say that in *Reeves,* "To be sure, we did observe that 'section 2933.1(a) has no application to a prisoner *who is not actually serving a sentence for a violent offense . . . .*' [Citation.] But the italicized phrase, read in context, was merely a shorthand reference to

[the court's] conclusion that the credits restriction ended for the petitioner when he no longer was 'convicted' [citation] of the credit-limiting offense—in other words, 'when the term for the violent offense [had] been served.' [Citation.]" (*Id.* at pp. 783–784.) Accordingly, the *Pope* court cautioned that "to read the phrase as creating a general rule to the effect that confinement must be attributable to a credit-limiting offense is to expand *Reeves* far beyond its reasoning or holding . . . ." (*Id.* at p. 784.)

■ The *Pope* court went on to explain that the approach the *Reeves* court took supported the conclusion that the credit-limiting statute did apply to Pope's sentence. (*Pope, supra*, 50 Cal.4th at p. 784.) The *Pope* court clarified that although section 654 prohibits multiple punishment, it does not operate to bar multiple convictions. (50 Cal.4th at p. 784.) Therefore, although execution of the sentence for Pope's credit-limiting offenses had been stayed under section 654, the *Pope* court concluded that Pope was still convicted of "those offenses both as a formal matter, in the sense that the *convictions* have not been dismissed or stayed [citations], and as a practical matter, in the sense that, if the convictions for the nonqualifying offenses were reversed on appeal or vacated in a habeas corpus proceeding, he would be returned to the sentencing court for execution of the sentence imposed for the qualifying offenses—those for which execution of sentence previously had been stayed. [Citations.] Accordingly, . . . the qualifying offenses 'give[] the [CDCR] [a] claim to [petitioner's] physical custody.' [Citation.] That claim has not yet expired. In sum, [Pope] is a person who 'is convicted' of a qualifying felony within the meaning of section 2933.1(a)." (50 Cal.4th at p. 784, fn. omitted.)

■ Similarly, in this case, Borlik was convicted of a qualifying offense[7] and even though the court struck the punishment for the great bodily injury enhancement and the sentence on the qualifying offense was stayed pursuant to section 654 under *Pope* he is still subject to the section 2933.1 credit-earning limitation.

However, after the *Pope* decision became final, respondent petitioned this court to file a supplemental brief on the question of the retroactivity of that decision because Borlik has been released from custody. As noted, the CDCR filed a request to stay the superior court's order mandating that the CDCR recalculate Borlik's release date and if he was eligible for release, to release him immediately on parole. The superior court granted temporarily the CDCR's request to stay the order until May 8, 2009, to permit the CDCR to pursue a petition for writ of supersedeas in this court. This court granted a temporary stay on May 8, 2009, however, on August 7, 2009, this court

---

[7] Driving with a BAC of 0.08 percent or greater during which he personally caused serious bodily injury within the meaning of section 12022.7.

summarily denied the CDCR's petition for writ of supersedeas and vacated the temporary stay. Accordingly, Borlik was released on parole in August 2009.

Thus, we are faced with the issue of whether Borlik should be returned to the custody of the CDCR to finish serving his sentence. This means it is necessary to determine if the *Pope* decision should be given retroactive effect.

■ "To determine whether a decision should be given retroactive effect, the California courts first undertake a threshold inquiry: does the decision establish a new rule of law? If it does, the new rule may or may not be retroactive . . . ; but if it does not, 'no question of retroactivity arises,' because there is no material change in the law. [Citations.] In that event the decision simply becomes part of the body of case law of this state, and under ordinary principles of stare decisis applies in all cases not yet final. 'As a rule, judicial decisions apply "retroactively." [Citation.] Indeed, a legal system based on precedent has a built-in presumption of retroactivity.' [Citation.]" (*People v. Guerra* (1984) 37 Cal.3d 385, 399 [208 Cal.Rptr. 162, 690 P.2d 635] (*Guerra*).)

"The most common examples of decisions that do not establish a new rule of law in this sense are those which explain or refine the holding of a prior case, those which apply an existing precedent to a different fact situation, even if the result may be said to 'extend' the precedent, or those which draw a conclusion that was clearly implied in or anticipated by previous opinions. [Citations.]" (*Guerra, supra*, 37 Cal.3d at p. 399.) However, other examples have included a decision in which the California Supreme Court "gave effect to a statutory rule that the courts had theretofore misconstrued [citation] or had not definitively addressed [citation] . . . ." (*Id.* at fn. 13.)

Furthermore, there is no issue of retroactivity when the California Supreme Court resolves a conflict between lower court decisions, or addresses an issue not previously presented to the courts. " 'In all such cases the ordinary assumption of retrospective operation [citations] takes full effect.' [Citations.]" (*People v. Watson* (2008) 43 Cal.4th 652, 688 [76 Cal.Rptr.3d 208, 182 P.3d 543].)

■ "If the decision establishes a new rule of law, a second question arises: was there a prior rule to the contrary? If there was, the new rule—again—may or may not be retroactive . . . ; if there was not, the new rule applies in all cases not yet final. This is so for the obvious reason that there cannot have been any *justifiable* reliance on an old rule when no old rule existed. And the emphasized word is crucial: 'Unjustified "reliance" is no bar to retroactivity.' [Citation.] It follows that 'In all such cases the ordinary

assumption of retrospective operation [citations] takes full effect.' [Citation.]" (*Guerra, supra,* 37 Cal.3d at pp. 399–400.)

The CDCR argues that the *Pope* decision did not create a new rule of law. Rather, the *Pope* decision resolved a conflict between lower court decisions and must therefore be applied retroactively.

We agree with the CDCR that the *Pope* decision should be applied retroactively in this case because the Supreme Court not only resolved a conflict between lower court decisions it "gave effect to a statutory rule" that at least two courts had "misconstrued" up until the time the Supreme Court decided *Pope.* (*Guerra, supra,* 37 Cal.3d at p. 399, fn. 13.)[8]

Borlik argues that applying *Pope* retroactively will result in the filing of postconviction petitions for writs of habeas corpus by defendants claiming due process violations because they entered into plea bargains after being told that because the sentence for a violent felony was stayed they would be eligible for half-time credit. That may be the case, however, conspicuously absent here is any evidence that Borlik relied on such advice in entering his plea bargain.

Borlik claims that the parties relied on *In re Phelon* in calculating his EPRD. Borlik maintains that he was advised by his CDCR counselor that if he accepted assignment to a California Conservation Camp he would begin earning the two-for-one credits provided in section 2933.3 upon arrival at that camp. He asserts he accepted the assignment and diligently performed all assigned duties including working every day for over a year to take advantage of the time reductions provided in section 2933.3.[9] The record does support Borlik's assertions.

Nevertheless, the EPRD calculation is predictive, in that it is subject to change. Therefore, such things as a change in the inmate's credit-earning status, the denial or loss of credit through disciplinary action, the restoration of previously denied or lost credits, or a subsequently imposed consecutive prison term will change the calculation. The CDCR recalculates the EPRD upon any such change and at six-month intervals. (*In re Tate* (2006) 135

---

[8] In 2009, the Fourth District Court of Appeal decided *In re Gomez,* formally published at 179 Cal.App.4th 1272 [102 Cal.Rptr.3d 221], which agreed with *In re Phelon. In re Gomez* and *In re Phelon* were disapproved by the Supreme Court in *Pope, supra,* 50 Cal.4th at page 785, footnote 3.

[9] Section 2933.3, subdivision (a), provides that "any inmate assigned to a conservation camp by the Department of Corrections and Rehabilitation, who is eligible to earn one day of credit for every one day of incarceration pursuant to Section 2933 shall instead earn two days of credit for every one day of service."

Cal.App.4th 756, 759 [37 Cal.Rptr.3d 710].) If the Supreme Court's *Pope* decision had been handed down while Borlik was still in custody, the CDCR would simply have recalculated Borlik's EPRD in line with that decision.

Finally, Borlik claims that because he completed his imposed term of imprisonment, has reintegrated into society and is in full compliance with his parole condition, it would be unjust to order his reincarceration.

We point out that Borlik has not completed his imposed term of imprisonment. Borlik was sentenced to six years in state prison. As noted, initially the CDCR applied a 50 percent worktime credit earning capacity to Borlik's sentence, but this was changed to a 15 percent credit earning limitation while he was still incarcerated. At the time Borlik was released from prison on parole after he prevailed in the lower court on his habeas corpus petition, he had served a little more than three years on his six-year sentence. Although this court has some sympathy for Borlik's position, he was aware that there was the possibility that he could be returned to prison to finish serving his six-year term. Indeed, when Borlik submitted a declaration in support of his opposition to the CDCR's petition for writ of supercedeas, he attested to just such a possibility.

In effect, by failing to grant the CDCR's petition for writ of supersedeas Borlik has received an unauthorized early release on parole.

In *People v. Tanner* (1979) 24 Cal.3d 514, 518–522 [156 Cal.Rptr. 450, 596 P.2d 328], our Supreme Court addressed the proper remedy when there has been an illegal grant of *probation*. *Tanner* determined that the trial court had unlawfully granted the defendant probation and a one-year jail term rather than send him to prison. Since the defendant had completed both the jail term and probation and because sending the defendant to prison for a second incarceration would have been unjust, the Supreme Court "declined to order the defendant to serve the required prison term. [Citation.]" (*People v. Statum* (2002) 28 Cal.4th 682, 697 [122 Cal.Rptr.2d 572, 50 P.3d 355] (*Statum*).)[10]

However, in *Statum, supra,* 28 Cal.4th at pages 695–697, the Supreme Court questioned whether *Tanner* continued to be controlling in situations in

---

[10] A similar result was reached in *People v. Holt* (1985) 163 Cal.App.3d 727 [209 Cal.Rptr. 643]. There, the defendant was granted probation erroneously; pending appeal, he served a one-year county jail term imposed as a condition of probation, was returned to the community and was progressing satisfactorily on probation. The court observed if the defendant was sentenced to state prison, after application of credits he would serve only eight or nine months; the court concluded it would be cruel and unusual punishment to subject defendant to a second incarceration. (*Id.* at p. 734.)

which there had been an illegal grant of probation. *Tanner* had noted that a defendant's legitimate expectations would be defeated if his sentence was increased after an appeal. (*People v. Tanner, supra,* 24 Cal.3d at p. 521.) However, *Statum* stated that even if *Tanner* remained good law, it had been limited. Specifically, *Statum* noted that "the Courts of Appeal have limited *Tanner* to circumstances in which (1) the defendant has successfully completed an unauthorized grant of probation; (2) the defendant has returned to a law-abiding and productive life; and (3) 'unusual circumstances' generate a 'unique element' of sympathy, such that returning the defendant to jail 'would be more than usually painful or "unfair." ' [Citation.]" (*Statum, supra,* at pp. 696–697, fn. 5.) *Statum* did not reach the same result as that in *Tanner* stating that "[e]ven *if Tanner* remains good law, defendant cannot satisfy this test." (*Ibid.,* some italics added.)[11]

Moreover, this is not an appeal from a judgment imposing probation but from the granting of a writ of habeas corpus releasing a prisoner prematurely on parole.

Unfortunately for Borlik, he has no legitimate expectation that he would not be returned to prison. Borlik has not successfully completed his parole—he will be on parole until at least 2012. Even though Borlik may have returned to a law-abiding and productive life, we do not find that there are unusual circumstances in this case that generate a unique element of sympathy such that returning Borlik to prison would be more than *usually* painful or unfair.

Furthermore, if we were to grant Borlik's request not to send him back to prison, in effect we would be granting clemency. The power to commute a sentence is exclusively the Governor's. (*People v. Enriquez* (1985) 173 Cal.App.3d 990, 998 [219 Cal.Rptr. 325].)

In conclusion, Borlik's case is governed by *Pope, supra,* 50 Cal.4th 777. As such, we must reverse the superior court's order granting Borlik's requested relief.

---

[11] As other courts have noted, *Tanner* and *Holt* are the exceptions, not the rule, and those holdings stem from peculiar fact patterns in which the defendants had fully completed their probationary terms. (*People v. Almodovar* (1987) 190 Cal.App.3d 732, 749 [235 Cal.Rptr. 616]; *People v. Gonzales* (1979) 96 Cal.App.3d 725, 727 [158 Cal.Rptr. 205].) For example, in *People v. Warner* (1978) 20 Cal.3d 678 [143 Cal.Rptr. 885, 574 P.2d 1237], overruled on other grounds in *People v. Douglas* (1999) 20 Cal.4th 85, 92, footnote 6 [82 Cal.Rptr.2d 816, 972 P.2d 151], the California Supreme Court did not hesitate to allow a probationer to be resentenced even though he had successfully served two years on probation. (*Warner,* at p. 689.)

## Disposition

The order of the superior court granting Borlik's petition for writ of habeas corpus is reversed.

Mihara, J., and McAdams, J.,[*] concurred.

A petition for a rehearing was denied April 27, 2011, and petitioner's petition for review by the Supreme Court was denied July 20, 2011, S193122.

---

[*]Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.