Filed 6/15/22  P. v. Stewart CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060088 |
| v. | (Super. Ct. No. 12NF3868) |
| PAUL ANTHONY STEWART, JR. | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Reversed and remanded with directions.

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

In 2015, a jury convicted Paul Anthony Stewart of attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a))[1] and found true enhancement allegations that he personally had discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) and had committed the offense to benefit a criminal street gang (§ 186.22, subd. (b)). The trial court sentenced Stewart to a seven-year prison term on the attempted murder conviction, with a consecutive 10-year sentence on the criminal street gang enhancement and a consecutive 25-years-to-life sentence on the discharge of firearm enhancement. In a nonpublished opinion, *People v. Stewart* (May 16, 2018, G053869), a panel of this court affirmed the judgment of conviction against Stewart.

Stewart filed the present appeal after the trial court, at a resentencing hearing, declined to strike or dismiss the discharge of firearm enhancement imposed under section 12022.53, subdivision (d) (section 12022.53(d)). Stewart argues his trial counsel was ineffective by not proposing to the trial court that as an alternative it impose one of the two lesser enhancements under section 12022.53, subdivision (b) (10 years) or subdivision (c) (20 years). Without deciding whether Stewart's counsel was ineffective, we reverse and remand to permit the trial court to consider all sentencing options under section 12022.53.

FACTS

The facts are taken from *People v. Stewart, supra*, G053869.

"On March 31, 2012, at approximately 2 p.m., a gunman approached a vehicle parked outside an apartment complex in an area of La Habra claimed by the Monos criminal street gang. Juan Yni[g]uez and Raul Martinez, both members of the Monos gang, occupied the vehicle and had the passenger side window rolled down approximately two inches. Although reluctant to discuss the shooting with the police, the victims admitted the gunman called out, 'Where are you from,' and then stuck the gun

---

[1]  Statutory and code references are to the Penal Code.

2

'through like where that little hole is' in the lowered window. The gunman pulled the trigger either as Yniguez and Martinez fled out of the car, or after they exited it, and two bullets struck Yniguez in his shoulder and his leg.

"Forensic investigators recovered Stewart's thumb and palm prints on the outside of the front passenger window of the victims' vehicle. An investigator explained at trial that because of the palm print's location 'all the way up to the top edge of the window,' the print 'had to be deposited while that window was rolled down'; otherwise, the rubber trim around the door would have prevented a print there with the window up. Based on the film of dust and dirt that covered the rest of the car, but was absent in the area of '"recent disturbances"' marked by the prints, the investigator concluded the prints were fresh. The investigator acknowledged that dating the disturbances was inexact — the prints could have been left the previous day or as much as a week before, including, for example 'in a mall parking lot,' as Stewart's attorney suggested.

"Yniguez and Martinez testified at trial, but neither would identify Stewart as the shooter. Both testified they did not want to be a 'rat' and that 'bad things' happened to rats, including beatings and murders. Yniguez similarly had refused to disclose the shooter's identity to the police. At trial, Yniguez testified he did not see the person who shot him and did not remember anything about the shooting. Martinez testified affirmatively on cross-examination that Stewart was not the shooter. Stewart's cousin testified Stewart was not in La Habra at the time of the shooting.

"Officer Michael Costanzo of the La Habra Police Department testified as the prosecution's gang expert. He opined that Stewart was a member of the All West Coast criminal street gang (AWC), and he explained that AWC and Monos were rivals. Costanzo based his opinion Stewart was an active AWC member on multiple factors: (1) Stewart's tattoos, including a large 'AWC' tattoo across his abdomen, 'All West Coast' tattooed on his left arm, and 'AWC' tattooed down his left leg; (2) field contacts Costanzo personally made with Stewart in 2007 and other AWC members, including one

3

in which Stewart claimed within hearing of other members that he was an AWC member; (3) another field contact Costanzo personally made in 2009 in which Stewart admitted he belonged to AWC and that his moniker was 'Sage'; (4) the facts of the charged crime, where the gunman shot a rival gang member after issuing a typical gang 'hit up' challenge ('Where are you from'); and (5) Costanzo found ample gang indicia on Stewart's Facebook page, including photographs uploaded to the site in 2012 a few months before the shooting.

"The social media photographs depicted:  (a) Stewart's gang tattoos, AWC hand signs, and AWC graffiti; (b) a memorial photograph of a deceased AWC member; and (c) a photo of Stewart pretending to be an employee of a fictitious organization called 'West Coast Postal' with his badge number displaying '345,' a number commonly used by AWC to identify the gang.  Stewart's Facebook page also included AWC-related comments and interactions with other known AWC gang members.  Additionally, Costanzo testified he had been the investigating officer in a November 2008 incident in which Stewart was present when other AWC members vandalized a home while calling out 'AWC.'

"Costanzo further explained that shooting a rival gang member in rival gang territory right after saying, 'Where are you from?' benefits, furthers, and promotes a street gang's criminal activity and influence by increasing the gang's reputation for violence, elevating the individual's status in the gang, assisting with recruitment of new members by elevating the gang's status, and frightening the gang's rivals.

"Irving Gutierrez testified briefly about the November 2008 vandalism incident at his apartment.  He explained it arose when one of 'my closest friends,' an AWC member named Matthew Garcia, 'jumped my little brother, and I had already left the party, so I didn't know until after when my brother came home all bruised up.'  A few days later, Gutierrez spotted Garcia walking by Gutierrez's apartment, and confronted Garcia about the beating.  Garcia departed and returned later with several friends

4

Gutierrez recognized as AWC members, including Stewart, whom Gutierrez knew as Sage. Gutierrez described the damage from the incident as a 'broken window,' caused by a '[b]eer bottle was thrown through it and then a few rocks.' He testified the 'subjects' 'claimed' AWC during the confrontation and reminded him 'you live[ in] All West Coast territory.' Gutierrez did not say how the confrontation dissipated, but he knew vandalism charges had been brought against several of those present, but only Garcia was convicted." (*People v. Stewart, supra,* G053869.)

POSTAPPEAL PROCEDURAL HISTORY

As noted, the jury convicted Stewart of attempted murder and found to be true the discharge of firearm enhancement allegation under section 12022.53(d). In 2016, when the trial court sentenced Stewart, the court did not have discretion to strike or dismiss the section 12022.53(d) discharge of firearm enhancement. (§ 12022.53, former subd. (h).) But the Legislature subsequently passed Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill No. 620), which, effective January 1, 2018, amended section 12022.53 to grant the trial court such discretion. (Stats. 2017, ch. 682, § 2.) Section 12022.53, subdivision (h) (section 12022.53(h)) now states, "[t]he court may, in the interest of justice . . . strike or dismiss an enhancement otherwise required to be imposed by this section." (See *People v. Flores* (2020) 9 Cal.5th 371, 431.)

In July 2019, Stewart filed a petition for writ of habeas corpus in the California Supreme Court. He alleged he had received ineffective assistance of counsel because his trial counsel had not sought retroactive application of section 12022.53(h). In May 2020, the Supreme Court issued an order to show cause[2] and, as a result, a resentencing hearing was scheduled to give the trial court the opportunity to consider

---

[2] The order to show cause stated: "The Secretary of the Department of Corrections and Rehabilitation is ordered to show cause before the Orange County Superior Court, when the matter is ordered on calendar, why petitioner is not entitled to relief pursuant to Senate Bill No. 620."

exercising its discretion under section 12022.53(h). The trial court conducted a resentencing hearing on February 19, 2021.

After hearing argument from counsel, the court, in the interest of justice, declined to exercise its discretion under section 12022.53(h) to strike or dismiss the firearm discharge enhancement and stated the reasons for its decision at length on the record. After acknowledging its discretion granted by Senate Bill No. 620, the trial court analyzed the legislative history behind the discharge of firearm enhancement under section 12022.53(d). The trial court next considered each of the general objectives in sentencing listed in rule 4.410 of the California Rules of Court, circumstances in aggravation under rule 4.421, circumstances in mitigation under rule 4.423, and factors affecting imposition and striking of enhancements under rule 4.428(b). In conclusion, the court stated: "[T]his was a violent criminal episode that resulted in the intentional shooting of a perceived rival gang member who was simply sitting in the car. [Stewart] exhibited a callous disregard for the safety of others by shooting into the window of the car, causing two separate bullets to penetrate the victim's shoulder and his leg."

Stewart appealed. His appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). After the California Supreme Court filed its opinion in *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), Stewart requested leave to file supplemental briefing to raise an ineffective assistance of counsel claim based on his trial counsel's failure to apprise the trial court of its discretion to substitute a lesser firearm use enhancement for the section 12022.53(d) enhancement. We granted the request, and Stewart filed a supplemental brief. The Attorney General has not filed a brief in response.

DISCUSSION

Section 12022.53 sets forth three separate sentence enhancements based on a defendant's personal use of a firearm in the commission of certain felonies. The most serious, which the jury found applicable in this case, is the 25-years-to-life enhancement

6

of section 12022.53(d) for causing great bodily injury or death by discharging a firearm. Section 12022.53 also contains lesser enhancements of 10 years for personal use of a firearm (*id*., subd. (b)) and 20 years for personal and intentional discharge of a firearm (*id*., subd. (c)).

At the time of the resentencing hearing in this case, there was a split of authority on the issue whether the power under section 12022.53(h) to strike or dismiss a section 12022.53(d) enhancement included the power to reduce that enhancement to one of the lesser enhancements set forth in subdivision (b) or (c) of that section. In *People v. Morrison* (2019) 34 Cal.App.5th 217, a panel of Division Five of the First Appellate District concluded trial courts have "discretion to impose an enhancement under section 12022.53, subdivision (b) or (c) as a middle ground to a lifetime enhancement under section 12022.53, subdivision (d), if such an outcome [is] found to be in the interests of justice under section 1385." (*Id*. at p. 223.) In *People v. Tirado* (2019) 38 Cal.App.5th 637, reversed with directions, *Tirado, supra*, 12 Cal.5th 688, a panel of the Fifth Appellate District concluded section 12022.53(h) does not grant trial courts the discretion to substitute lesser firearm enhancements. (*People v. Tirado, supra*, at p. 640; see *People v. Garcia* (2020) 46 Cal.App.5th 786, 790-791 [reaching same conclusion]; *People v. Yanez* (2020) 44 Cal.App.5th 452, 458 [same].)

In *Tirado*, the California Supreme Court resolved the split by concluding, "*Morrison* correctly described the scope of a trial court's sentencing discretion under section 12022.53." (*Tirado, supra*, 12 Cal.5th at p. 697.) The Supreme Court held, "the statutory framework permits a court to strike the section 12022.53(d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead." (*Id*. at p. 692.) "To summarize: "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53(d) enhancement, and the court determines that the section 12022.53(d) enhancement should be struck or dismissed under section

12022.53(h), the court may, under section 12022.53(j), impose an enhancement under section 12022.53(b) or (c)."  (*Id.* at p. 700.)

At the resentencing hearing, Stewart's trial counsel asked the court only to dismiss or strike the section 12022.53(d) enhancement and did not raise the possibility of a lesser enhancement.  Although claims of error in the trial court's exercise of sentencing discretion usually are forfeited if not raised at the sentencing hearing (*People v. Trujillo* (2015) 60 Cal.4th 850, 856), we decline to find forfeiture for three reasons.

First, Stewart is entitled to retroactive application of *Tirado*.  The general rule is judicial decisions are given retroactive effect, and even non-retroactive decisions govern all cases pending on direct review when the decision was rendered.  (*People v. Guerra* (1984) 37 Cal.3d 385, 400.)  This rule applies to decisions of the California Supreme Court, such as *Tirado*, that resolve conflicts between the Courts of Appeal or establish the meaning of a statutory enactment.  (*Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1023; *In re Borlik* (2011) 194 Cal.App.4th 30, 40; *People v. Walsh* (1996) 49 Cal.App.4th 1096, 1104.)  *Tirado* was decided while this appeal was pending. When *Tirado* was decided, the judgment in this case was not final, and it is not yet final, because the sentence on the firearm discharge enhancement was and remains under challenge in this appeal.

Second, application of the forfeiture rule in this case would not advance the rule's purpose of reducing "'the number of errors committed in the first instance'" and "'the number of costly appeals brought on that basis.'"  (*People v. Smith* (2001) 24 Cal.4th 849, 852.)  The rationale is "[s]uch errors are essentially factual, and thus distinct from '"clear and correctable"' legal errors that appellate courts can redress on appeal 'independent of any factual issues presented by the record at sentencing.'" (*People v. Trujillo, supra*, 60 Cal.4th at pp. 856-857.)

The policy considerations behind the forfeiture rule are inapposite here because Stewart's claim would not have reduced the number of appeals.  (*People v.*

8

*Smith, supra*, 24 Cal.4th at p. 852.)  At the time of Stewart's resentencing hearing, there was a split of authority on the trial court's discretion to impose a lesser enhancement under section 12022.53.  Thus, an appeal would have been likely even if defense counsel had raised the issue and however the trial court might have ruled.

Finally, whether the trial court had discretion to reduce a firearm enhancement under section 12022.53(d) and impose a lesser enhancement under section 12022.53 is a purely legal issue which we can resolve independently of factual issues presented at the sentencing hearing.  Appellate courts have been unwilling to apply the forfeiture rule if the defendant's claim involves clear legal error that is correctable on appeal and, if not corrected, could result in a defendant spending too much time in custody.  (See *People v. Welch* (1993) 5 Cal.4th 228, 236.)

Because we decline to find forfeiture, we do not address Stewart's claim of ineffective assistance of counsel.  We conclude instead the matter must be remanded with directions to the trial court to conduct a new sentencing hearing at which the court shall consider whether to exercise its discretion to substitute one of the lesser firearm use enhancements in place of the firearm discharge enhancement under section 12022.53(d).  "'Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]' [Citation.]  Where, as here, a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination." (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023.)  We express no opinion as to how the trial court should exercise its sentencing discretion on remand.

### DISPOSITION

The order declining to exercise the trial court's discretion under section 12022.53(h) to strike or dismiss the firearm discharge enhancement is reversed and the sentence is vacated.  The matter is remanded to the trial court with directions to conduct a

9

new sentencing hearing.  On remand, the trial court shall consider all sentencing options under section 12022.53.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.